The CITY OF HOUSTON, Texas, Appellant,

v.

EMMANUEL UNITED PENTECOSTAL CHURCH, INC., Appellee.

No. 110.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

May 22, 1968.

Rehearing Denied June 19, 1968.

William A. Olson, City Atty., Joseph G. Rollins, Senior Asst. City Atty., Houston, for appellant.

M. A. Whitworth, Lawrence C. Hoff, Jr., Whitworth & Hoff, Houston, for appellee.

TUNKS, Chief Justice.

In 1946, one T. H. Stancliff, established a residential subdivision named Southmont Addition Annex No. 4. This subdivision lay in Harris County, Texas, southwest of the City of Houston. By annexation the area has now been included within the City of Houston. It had in it between 100 and 150 lots. A document was filed for record in the office of the County Clerk of Harris County, Texas, reciting restrictions on the use to which the lots might be put. Generally, except for lots along one street, the use was restricted to residential purposes.

In 1966, the appellee, Emmanuel United Pentecostal Church, Inc., a non-profit religious corporation, acquired two of the lots in the subdivision, Lots 10 and 11 of Block 3. It thereupon made application to the City of Houston for a permit to build a church on its lots. The City issued the permit but soon thereafter revoked it and stopped the construction of the church building. When that occurred, the church filed suit in the District Court of Harris County, Texas, against the City and its Director of Public Works. As plaintiff in the trial court, the church alleged that it brought the suit under Art. 974a–2, Vernon's Ann.Tex.Civ.St., asking that the restrictions "be modified, altered or stricken," as to its lots and for an order directing the City's Director of Public Works to issue a permit for the construction of its building. A trial was had before the court without a jury. The trial court in its judgment made the following recitation:

"* * * That the construction of the proposed church building would not materially change the essentially residential character of the subdivision, so long as the square footage of the proposed building does not exceed 3,390 square feet, and that the restrictions to this subdivision be so altered to permit the construction of the proposed church building."

The trial court rendered judgment for the plaintiff church that the restrictions "be and the same are modified with respect to Lots 10 and 11 of Block 3 of such addition so as to permit the construction by plaintiff of a church building of no more than 3,390 square feet" and ordered the Director of Public Works of the City to issue a permit for such construction. The City has appealed.

The principal restriction with which we are concerned is in the following language: "All tracts shall be used for residence purposes only, except as hereinafter specified and all residences must meet specifications as hereinafter set out." Other restrictions establish building lines, prohibit signs and billboards, fix minimum square footage, etc. In their entirety they are consistent with and establish a general plan and scheme of a residential subdivision.

There was testimony as to a number of instances in which these restrictions were violated. There were a number of instances of non-conformance with building lines and a number of instances of the display of billboards and signs. On one of the lots a horticultural nursery was operated. In one of the houses was a "resale shop" and a real estate office. On another lot there was in operation a school bus repair business and an office from which a construction business was run. The evidence showed, however, that the residents of the subdivision had protested this last violation and proposed action to abate it. Two other violations, the operation of an electrical business from a corrugated iron building and the operation of a beauty shop, were the subject matter of pending suits filed by the residents. Perhaps the most significant evidence related to a church within the subdivision. This evidence showed that Southmont Baptist Church was built in the subdivision in 1962 and had been in continuous operation since

that date. There was apparently a complete acquiescence in this violation.

Prior to 1965, the enforcement of contractual restrictions of the character here under consideration was dependent on action being taken by the owners in the restricted areas. Some municipalities in Texas accomplished a comparable result by the enactment of and enforcement of zoning ordinances. In 1965, Art. 974a–1 was enacted. That statute impowered municipalities situated within a county having a population of more than 1,000,000 and which did not have zoning ordinances to institute legal proceedings for the purpose of enforcing contractual restrictions on property within their boundaries. Contemporaneously, Art. 974a–2, Vernon's Ann. Tex.Civ.St., was enacted. The latter statute applies only to those cities having a population of more than 900,000. It requires that one proposing the construction within the city limits of a commercial building (defined in the statute as any building other than a single family residence) file with the city a request for a permit to build. It further makes provision that the city be fully informed as to the status of any contractual use restrictions which relate to the proposed building and authorizies the city to refuse the permit if the building would violate existing restrictions. Sec. 7 of Art. 974a–2, pursuant to which this suit was filed, is in the following language.

"Sec. 7. An administrative refusal to issue a commercial permit on the grounds of violation of restrictions contained in a deed or other instrument shall be reviewable by a court of appropriate jurisdiction provided notice of filing of such suit is given the city department responsible for issuing commercial building permits within ninety (90) days. In the event of changed conditions within a subdivision or any other legally sufficient reason that restrictions should be modified a person refused a commercial building permit can petition a court of appropriate jurisdiction to alter the restric-

tions to better conform with present conditions."

■ The determination of the question presented in this appeal requires a construction of that statute. In such construction we are required to determine the intention of the legislature in enacting this statute. Calvert v. British-American Oil Producing Co. (Tex.Sup.Ct.), 397 S.W.2d 839; McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722; Shanken v. Lee Wolfman, Inc., Tex.Civ.App., 370 S.W.2d 197, ref. n. r. e.

The common law with reference to the enforceability of residential restrictions is set out in Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943, 945, in the following language:

"There are certain rules of law by which a court of equity must be guided in determining whether to enforce a residential-only restriction. It may refuse to enforce it because of the acquiescence of the lot owners in such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it. 5 Restatement of the Law of Property, § 561; 2 American Law of Property, § 9.38; 14 Am.Jur. 644–646, Covenants, Conditions and Restrictions, § 295–298; 12 Tex.Jur. 172–174, Covenants and Conditions § 108. It may also refuse to enforce it because there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant. 5 Restatement of the Law of Property § 564; 2 American Law of Property, § 9.39; 14 Am.Jur. 648, § 305."

Thus the court characterized the "changed conditions" which would render such restrictions unenforceable—a change making it impossible to realize the benefit of the restrictions. It also identified the "other legally sufficient" reasons for not enforcing them—abandonment or waiver by

acquiescing in substantial violations. But the relief made available by the legislature by the enactment of Art. 974a–2 was not an outright denial of enforcement of the restrictions. Rather, that statute made available under the proper circumstances a modification or alteration of them. We are of the opinion that less far-reaching "changed conditions" would make it equitable to modify the restrictions than would be required to make them entirely unenforceable. Acquiescence in less substantial violations would indicate an abandonment of part of the prohibition in the restrictions than would be required as a basis for a holding that they had been abandoned in their entirety. Acquiescence in a particular and less substantial violation might well evidence a waiver of the right to prevent other and similar violations without constituting a full waiver of the right to enforce the restrictions.

We do not believe it was the purpose of the legislature in enacting this statute to simply re-enact the common law as set out in Cowling v. Colligan, supra. The relief available to one when the situation met the requirements of the common law as therein set forth is the court's refusal to enforce the restriction at all. The relief provided by the legislature in Art. 974a–2 is a modification and alteration of the restriction as a condition to the court's enforcing it.

■ In arriving at our construction of Art. 974a–2, we have given consideration to the contemporaneous enactment of Art. 974a–1. Since the two statutes relate to the same subject matter they should be construed together. Calvert v. Fort Worth Nat. Bank, 163 Tex. 405, 356 S.W.2d 918. It is almost inevitable that a city with more than 900,000 population would lie within a county of more than 1,000,000 population. Thus, Art. 974a–1 empowered such cities to enforce the common law rules as to contractual restrictions and the enactment of Art. 974a–2 would not have been necessary if the legislature had not intended some other character of enforcement.

■ The fact situation presented here appears to be exactly what the legislature had in mind in the enactment of Art. 974a–2. Here the owners within the restricted area had acquiesced in the construction of a church within the subdivision and in its operation for approximately four years. Such construction and operation of the church constituted a violation of the residential restrictions, but not such a violation as to render them wholly invalid or unenforceable. Cowling v. Colligan, supra. The judgment rendered by the trial court did not invalidate those restrictions nor adjudge them wholly unenforceable. Nor did the trial court adjudge that any church of any size or character could be established at any place in the subdivision. The trial court merely held that under Art. 974a–2, the restrictions should be modified by altering them so as to permit the construction proposed by appellee—a church building having 3,390 square feet and located on Lots 10 and 11 of Block 3 in the subdivision. We are of the opinion that it was the intention of the legislature in the enactment of that statute to make provision for the rendition of such a judgment where there were changes of condition or other legally sufficient reasons for modification or alteration of the restrictions, even though those changed conditions or other legally sufficient reasons would not have been legally sufficient for the invalidation of the restrictions that apply to the property in question or for the invalidation of the entire general plan or scheme.

The judgment of the trial court is affirmed.