CITY OF HOUSTON et al., Appellants,

v.

Pete KLONIS, Appellee.

No. 444.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 28, 1971.

Rehearing Denied May 26, 1971.

Thomas N. Crowell of Hutcheson, Taliaferro & Grundy, William A. Olson and Brian L. Reade, Houston, for appellants.

Chris Dixie, Houston, for appellee.

TUNKS, Chief Justice.

Pete Klonis, plaintiff in the trial court and appellee here, is the owner of lots 1 and 24 in block 11, MacGregor Place, Section 3, a subdivision in the City of Houston. He made application to the Houston Department of Public Works for a permit to build a commercial building upon his lots. The Department of Public Works refused the permit because all of the lots in such subdivision are restricted to use for residential purposes. Klonis then filed suit in the District Court of Harris County, Texas, against the City of Houston, asking that the restrictions be modified, altered or stricken as to his lots and that the director of the Department of Public Works be ordered to issue the building permit for which he had applied. In his suit he invoked the terms of Art. 974a–2, Vernon's Ann.Tex.Civ.St. Milton Wilson, an owner of another lot in the subdivision intervened and opposed the suit by Klonis. Wilson's intervention was on an individual basis and he did not purport to represent any class of owners within the subdivision. After a non-jury trial the trial court rendered judgment that the restrictions applicable to lots in the subdivision be modified so as to remove from Klonis' lots the restriction against their use for any other purpose than residential and ordered that the City issue to Klonis the commercial building permit. The City and Wilson have perfected their appeal.

The judgment of the trial court is reversed and judgment is here rendered that the plaintiff in the trial court be denied all relief prayed for.

MacGregor Place, Section 3, was established as a subdivision in 1950. It abuts the west side of South Park Boulevard. There are about 150 lots in it. Only four of the lots in the subdivision lie adjacent to South Park Boulevard and Klonis' two lots are two of the four so situated. South Park Boulevard runs generally north and south. The lots in the subdivision are rectangular in shape and their longer dimensions extend north and south. The lots abutting South Park Boulevard do not face that street but rather face side streets that run east and west.

At the date of the establishment of the subdivision the street now called South Park Boulevard was called Holmes Road. It was a two-lane, two-way street with comparatively little traffic. There was little commercial development in the area. The street has now been widened to four lanes with an esplanade in the center. It has become a thoroughfare with heavy traffic. About three-quarters of a mile north of the subdivision there is now a shopping center and there is another one about the same distance to the south. Almost all of the property abutting South Park Boulevard between the two shopping centers, except the four lots in this subdivision, is now occupied by commercial establishments or by churches. It is these changes in the use and character of the adjoining street and the other property on the street that Klonis presents as a basis of his prayer that the restrictions be modified so as to permit his two lots to be used for commercial purposes. He admits that there are no facts showing waiver of the restrictions by the owners of the lots in the subdivision. There is no evidence that the restrictions have been abandoned. There is no evidence of facts which would estop other owners in the subdivision from enforcing the restrictions.

This Court has previously held "that less far-reaching 'changed conditions' would make it equitable to modify the restrictions than would be required to make them entirely unenforceable." City of Houston v. Emmanuel United Pentecostal Ch., Tex.Civ.App., 429 S.W.2d 679, 682, ref. n. r. e., Tex., 433 S.W.2d 680. The Su-

**184**

preme Court in its Per Curiam opinion refusing the application for writ of error pointed out that a number of questions as to Art. 974a–2 were not raised in that case. Those questions either are not raised here or need not be answered because of the disposition of the case.

The erection of a church in a subdivision violates a covenant restricting the property to use for residential purposes but is such a trivial violation that the toleration of it does not amount to a waiver or abandonment of the restrictions. Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943. In the Emmanuel United Pentecostal Church case, supra, it was held that the fact that the owners in a subdivision had tolerated the erection of the one church in the subdivision, and its operation for four years, while not enough to show waiver or abandonment of the restrictions, was enough to prevent the City from enforcing them, by refusing a building permit under Art. 974a–2, against those seeking to build another church. There are no comparable facts in this case.

The appellee does not contend that the commercial use of other property on South Park Boulevard renders all of the property in the subdivision unfit for residential purposes. In fact he argues that the use of his two lots for commercial purposes would not interfere with the intervenor's use of his lot as a residence. Intervenor's lot is on the other end of the subdivision, and some distance from South Park Boulevard. In Cowling v. Colligan, supra, at p. 946, the Court said:

"The reasoning of the courts is that if because of changed conditions outside the restricted area one lot or tract were permitted to drop from under the protective cover of residential-only restrictions, the owner of the adjoining lot would then have an equal claim on the conscience of the court, and, in due course, all other lots would fall like ten-pins, thus circumventing and nullifying the restriction and destroying the essentially residential character of the entire area. * * *"

As between the appellee and the city, if the restrictions were modified or altered so as to exclude appellee's two lots from them, that would, in the City's consideration of future applications for commercial building permits, start the "ten-pins" action mentioned in the Cowling case. To the same extent that such reasoning is applicable to a suit by interior lot owners to enforce the restrictions against a border lot owner, it is applicable here in a suit by a border lot owner seeking to compel the city to issue to him a commercial building permit.

Reversed and rendered.