NEW JERUSALEM BAPTIST
CHURCH, INC., Appellant,

v.

CITY OF HOUSTON, Appellee.

No. A2282.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 16, 1980.

Rehearing Denied May 14, 1980.

Lew W. Harpold, Gary L. Crofford, Harvey A. Ford, Hofheinz, Harpold, McDonald & Fitzgerald, Houston, for appellant.

John G. Lione, Jr., Asst. City Atty., Robert M. Collie, Jr., City Atty., Charles M. Williams, Senior Asst. City Atty., Marcia G. Johnson, Asst. City Atty., Houston, for appellee.

Before BROWN, C. J., and MILLER and PAUL PRESSLER, JJ.

PAUL PRESSLER, Justice.

This is an appeal from a permanent injunction, enjoining appellant from operating, conducting, or using two half lots in Shamrock Manor Subdivision, Houston, Texas, for church purposes or commercial activity in violation of the restrictions for such subdivision.

Appellant purchased the property in Shamrock Manor in 1974 with the intent of placing a church building thereon and conducting church services. Although its deed referred to the restrictions, appellant denied actual knowledge of them. They had existed since the development of the subdivision. Soon after the purchase, appellant cleared and leveled the property and placed a sign on it proclaiming it to be the future site of The New Jerusalem Baptist Church. However, the testimony indicates that the sign became faded and partially overgrown with weeds, significantly reducing its legibility from the street on which the property fronted. The evidence further reflects that there were three or four ongoing non-conforming uses of property within the subdivision, including another church which was a very short distance from the property in question.

Arrangements were made in October 1978 for the construction of the building on a site far removed from the lots in question and its transfer in a nearly completed form to the property in Shamrock Manor. In February 1979, the civic club for the subdivision informed appellant that the restrictions limited the use of the property to single family residences. Appellant claims it had spent $41,000.00 by that time, primarily for the construction of the building. In spite of the warning, appellant proceeded with its plans and moved its virtually

completed building onto the property in March 1979. Suit to enjoin violation of the restrictive covenant was brought April 2, 1979, and a temporary injunction was granted in May 1979. A permanent injunction was granted on July 26, 1979.

■ Appellant contends there was insufficient evidence to establish that the city's interest in enforcing the restrictive covenant outweighed the hardship to the church occasioned by its enforcement. We hold that there was sufficient evidence to support the conclusion reached by the trial court in weighing the equities. While Reverend Adams, a witness for appellant, testified that the church did not presently have the financial means to acquire a new site on which to relocate its building, there is no testimony that the lots in question could not be sold, yielding a substantial portion of the funds necessary for acquisition of an alternate site. Moreover, the evidence indicates that the building for which the majority of appellant's funds were expended is not permanently annexed to the property on which it presently rests in Shamrock Manor and could be transported to another site with approximately the same ease and expense required in moving the building to its present site. As the value of appellant's investment in the building could thereby be preserved, the alleged harm suffered from the enforcement of the restrictive covenant is significantly mitigated. The other expenses associated with preparing the lots for the building either added to their value or were not significant.

■ On the other hand, there is evidence that several of the home owners in Shamrock Manor purchased their homes in reliance on the restrictive covenants. In recent years many of the owners in the subdivision have formed a civic club which has actively sought the enforcement of the restrictive covenant against owners of lots with non-conforming uses. In order for a court to refuse to enforce a restrictive covenant based on a balancing of the equities, a disproportion of "considerable magnitude" must be shown to exist between the harm suffered by the non-conforming user and the benefit received by those seeking enforcement. *Cowling v. Colligan*, 158 Tex. 458, 312 S.W.2d 943 (1958). There is insufficient evidence to indicate such a disproportion in the case before us.

■ Appellant urges that the city was guilty of laches, either as a matter of law or by the great weight and preponderance of the evidence, and was thereby estopped from enforcing the restrictive covenant.

To conclude that the affirmative defense of laches was established against appellee as a matter of law, we would have to find no evidence to the contrary. There is at least some evidence to the contrary.

We hold further that there is sufficient evidence to support the court's conclusion that the defense of laches was not established. Prior to the placement of appellant's building on the lots in question, the only evidence of appellant's intention to place such a building there and conduct church services therein was the placement of a relatively small sign on the lots. As discussed above, the evidence indicates the sign had become faded and overgrown with weeds, rendering it illegible during the year prior to the placement of the building on the lots. There was no public notice given by the sign or otherwise of when appellant intended to carry out its intent nor was there evidence of when appellee received actual notice of this intent. Prior to any indication that any funds had been expended by appellant to make an improper use of the lots, the local civic club informed appellant that its plans were in violation of the deed restriction and would be opposed. Nevertheless, in March the building was moved onto the lots at night. The suit to enforce the deed restrictions was filed April 2, 1979. We hold that appellee was not properly charged with notice of a violation prior to the placement of the building on the lots and that the period of time between that occurrence and the filing of this action did not constitute unreasonable delay. We, therefore, hold that appellant failed to establish its affirmative defense of laches.

Appellant contends that it was error to grant the permanent injunction as the great weight and preponderance of the evidence established that appellee had waived its right to enforce the restrictive covenant. In order to establish the affirmative defense of waiver in a deed restriction case, the non-conforming user must prove that the violations then existing are so great as to lead the mind of the "average man" to reasonably conclude that the restriction in question has been abandoned and its enforcement waived. *Garden Oaks Board of Trustees et al. v. Gibbs*, 489 S.W.2d 133 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n. r. e.). Among the factors to be considered by the "average man" are the number, nature, and severity of the then existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *Cowling v. Colligan, supra.*

In the case before us, the evidence indicates that there are currently four non-conforming uses within the 169 lots of Shamrock Manor. There is some evidence of a salvage yard; however, there is conflicting evidence on whether a salvage business is being conducted therein. There is evidence of two beauty shops; however, both are allegedly incidental to the use of the property as residences (and as such should not be considered as evidence of a waiver of the covenant). *Davis v. Hinton*, 374 S.W.2d 723 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.). There is evidence of another church within the subdivision a short distance from appellant's lots. There was a great deal of evidence of prior nonconforming uses; however, these uses should not be considered in determining whether there is a present intent to abandon the restriction, as the applicability of the covenant is renewed once the violation of it ceases. *Schoenhals v. Close*, 451 S.W.2d 597 (Tex.Civ.App.—Amarillo 1970, no writ). Moreover, there is evidence of at least one recent enforcement of the covenant.

Based on the above, we hold there was sufficient evidence for the trial court to conclude that the "average man," when faced with these facts, would reasonably conclude that the restriction in question had not been abandoned nor its enforcement waived.

Affirmed.