JOSEPHINE E. ABERCROMBIE INTERESTS, INC. and Mercado Partners II, Appellants,

v.

CITY OF HOUSTON, Appellee.

No. 13–91–236–CV.

Court of Appeals of Texas, Corpus Christi.

April 30, 1992.

Rehearing Overruled June 4, 1992.

H. Lee Godfrey, Jeffrey Chambers, Houston, for appellants.

J. Eugene Clements, Evelyn V. Keyes, Houston, for appellee.

Before KENNEDY, DORSEY, and GILBERTO HINOJOSA, JJ.

KENNEDY, Justice.

Appellants, Josephine E. Abercrombie Interests, Inc. and Mercado Partners II (the Developers), appeal from a summary judgment granted in favor of the City of Houston (the City). Appellants assert that the summary judgment based on governmental immunity was granted improperly because in a transaction between the City and appellants, the City was engaged in a proprietary rather than a governmental function. We reverse the summary judgment and remand to the trial court for further proceedings.

This case involves the Mercado del Sol in Houston, Texas. The Mercado was a community development project designed to revitalize Houston's economically deprived Fourth Ward. Development of the Mercado was partially funded by federal funds pursuant to Title I of the federal Housing and Community Development Act of 1974 and the Texas Community Development Act of 1975. Title I and the Texas Community Development Act authorize municipalities like the City to seek federal funding for projects that fulfill certain criteria specified in the statutes as serving the public welfare. These types of projects are designed to be funded by a combination of federal Community Development Block Grant (CDBG) loans to private developers and by private capital supplied by developers. If the project is a success, the developers make a profit after paying back the federal loan.

In 1987, following lengthy negotiations in which both appellants and appellee were represented by counsel, the Developers purchased the Mercado and the parties executed a Memorandum of Understanding detailing the parties' obligations for the project development. Under the terms of the Memorandum, the City agreed to provide the Developers a low-cost CDBG loan not to exceed five million dollars. The parties agreed that the City would, upon conditions set out in the Memorandum, subordinate the CDBG loan to a third-party loan. Additionally, the parties agreed that the City would have a first lien position on the property. The allocation of federal CDBG funds to the Developers pursuant to their agreement with the City was approved by the Houston City Council on September 30, 1987. The Developers closed on the CDBG loan in March, 1988,

and began working on the Mercado. Within just over one year, the Developers drew approximately $3,108,000, of the available $5,000,000, CDBG funding.

The record reflects that in June, 1989, the City received a letter from HUD setting out its findings in reviewing the Community Development Block Grant Program administered by the City. The letter, in pertinent part, showed that the City failed to comply with the federal requirement that it determine whether CDBG funding was necessary or appropriate when the Developers reduced their proposed investment from $8.3 million to $5.3 million.

The record reflects that on October 10, 1989, the City sent the Developers a letter acknowledging the Developers' request to subordinate the CDBG loan to a third-party loan. The City pointed out that subject to the Memorandum of Understanding, it needed assurance that the third party did not have a common identity with the principals and owners of the Developers. Additionally, by the letter, the City expressed concern that the Developers had not resolved several financial and accountability matters that they were obligated to perform under the terms of the Memorandum. Along with the letter, the City enclosed a Notice of Default and Demand and Notice of Intent to Accelerate the CDBG loan made by the City for the Mercado project. The notice stated that the Developers failed to provide statements and meet certain obligations set out in the Memorandum of Understanding, and thus, were in default on the CDBG loan. If the Developers failed to cure the defaults, and failed to provide statements and assurances within thirty days of receiving the notice, the City would accelerate the loan note and the entire amount due plus interest. Subsequently, the City, pursuant to the Memorandum of Understanding, which gave the City a first lien position, foreclosed on the Mercado.

The Developers sued the City alleging fraud, negligent misrepresentation, constructive fraud, wrongful foreclosure, breach of fiduciary duty and breach of express and implied warranties and covenants. The Developers asserted that the City was liable for damages, interest, costs of suit, and attorney's fees.

The Developers alleged that the City induced them to purchase the Mercado by a fraudulent promise to loan money for the Mercado's development despite the City's alleged knowledge that the loan violated HUD lending requirements. The Developers also alleged that the City induced them to give the City a first lien position on the Mercado property with the promise that the City would subordinate its position to any third-party financing. The Developers assert that when they arranged third-party financing, the City refused to subordinate its first lien position. The Developers assert that because of the City's fraud, 1) HUD ultimately cut off funding to the City for the Mercado project, then 2) the City asserted its first lien position, which the Developers claim it had no legal right to do, and 3) the City then wrongfully foreclosed on the Mercado.

In response to the Developers' suit, the City filed a motion for summary judgment asserting that it is a municipal corporation, and as such, is entitled to immunity from all claims arising from the performance of its governmental functions except those permitted by the Texas Tort Claims Act. Tex.Civ.Prac. & Rem.Code Ann. § 101.002, et seq. (Vernon 1986). The City asserted in its motion that the loan of CDBG funds is a quintessential governmental function that is not waived by the Texas Tort Claims Act. Therefore, the City asserts, it is shielded from the Developers' claims as a matter of law and the Developers' pleadings fail to state a cause of action for which relief may be granted.

The Developers responded to the summary judgment motion, asserting that the City was unable to meet its burden to show the defense of governmental immunity as a matter of law and failed to show that there were no factual issues concerning the defense. The Developers assert that the City was acting in a proprietary capacity when agreeing to loan CDBG funds to them for the development of the Mercado. The Developers contend that the primary purposes

of the Mercado project were to create and maintain jobs for low and moderate income residents of Houston and to stimulate economic development in the area surrounding the Mercado. Therefore, the Developers contend, the loan of CDBG funds was a proprietary function performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality. *See City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex.1987). They assert that the City is not required to make CDBG fund loans, and if it chooses to do so, in its discretion, for the benefit of the inhabitants of the City, it is making a proprietary decision. Accordingly, the Developers assert that the City is not immune from liability for its tortious act. After considering the motions and supporting summary judgment evidence, the trial court granted summary judgment in favor of the City. Following the court's overruling a motion for new trial, the Developers appeal.

■ The standard for reviewing summary judgment evidence is well established. Defendants moving for summary judgment must expressly present and conclusively prove all essential elements of their affirmative defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovants will be taken as true and every reasonable inference will be indulged in favor of the nonmovants with any doubts resolved in their favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1979).

By point one, the Developers assert that the trial court erred by granting summary judgment in favor of the City based on governmental immunity because the City's acts complained of were proprietary, and thus the City may be liable for its wrongful acts in furtherance of those proprietary functions.

■ Under the Texas Tort Claims Act, proprietary functions are defined as those acts a municipality *may, in its discretion,* perform in the interest of the inhabitants of the municipality. Tex.Civ.Prac. & Rem. Code Ann. § 101.0215(b) (Vernon Supp. 1992); *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex.1986). Under the Texas Tort Claims Act, governmental functions are defined as those functions that are *enjoined* on a municipality by law and are given by the State as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public. Tex.Civ. Prac. & Rem.Code Ann. § 101.0215(a) (Vernon Supp.1992); *Gates,* 704 S.W.2d at 738–39; *City of Schertz v. Parker,* 754 S.W.2d 336, 340 (Tex.App.—San Antonio 1988, no writ). When the statute does not waive immunity for governmental functions, immunity remains the rule. *McCord v. Memorial Medical Center Hosp.,* 750 S.W.2d 362, 363 (Tex.App.—Corpus Christi 1988, no writ). Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of immunity, proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations. *Gates,* 704 S.W.2d at 739 (citing *Turvey v. City of Houston,* 602 S.W.2d 517, 519 (Tex.1980)). When addressing whether a function is governmental or proprietary, the difficulty lies not in stating the governing principles of law, but rather in applying those rules to a particular factual situation. The powers and duties of municipal corporations are of two-fold character; the public as regards the State at large, insofar as municipalities are the State's agents in government; the other private, insofar as municipalities provide the local necessities and conveniences for their own citizens. 18 McQuillin, Municipal Corporations, § 53.29 (3rd Ed.1984).

■ Under Texas law, governmental functions are those functions enjoined upon a municipality by law and are given by the State as part of its sovereignty. Tex.Civ. Prac. & Rem.Code Ann. § 101.0215(a) (Vernon Supp.1992). Where statutory terms are not defined they are to be given their ordinary meaning. Tex.Gov't.Code Ann. § 311.011(a) (Vernon 1988). "Enjoined"

means to order, to require, to command, to urge or impose with authority, or positively direct. Black's Law Dictionary, 276 (5th ed. 1979); Webster's New Twentieth Century Dictionary 604 (2d ed. 1979). When a municipality acts, but not in connection with duties imposed upon it under powers conferred to it as a legal agency of the State, or as the representative of the State's sovereignty, its acts are proprietary, and it is liable for torts committed by its officers or agents in performing them. *City of Schertz*, 754 S.W.2d at 340.

■ Under Texas Local Government Code, Sections 373.004 and 373.005, a municipality *may adopt* a community development program by ordinance or resolution. Additionally, under Texas Local Government Code, Section 374.002, the Texas Legislature made findings as to the intent of the Urban Renewal Statutes. Under Section 374.002(c), it is the intent of the legislature that private enterprise be encouraged to participate in accomplishing the objectives of urban renewal projects. In reading the related statutory language, we find nothing whereby the State enjoins a community development program upon the City of Houston. The language lacks the element of command necessary for enjoining a function on a municipality. Additionally, we note that the Memorandum of Understanding executed by the parties recites that the stated purpose of the Mercado project was to create jobs for low and moderate income residents of Houston, and to stimulate economic development in the area surrounding the Mercado property. This fits squarely within the statutory definition of a municipal proprietary function. Thus, we conclude the City was performing a proprietary function when it engaged in loaning CDBG funds to the Developers for the Mercado project.

This determination may seem to discourage public/private partnerships. Our concern is that this may result in undermining the enthusiasm of cities for these partnerships. Additionally, we recognize that without these types of public subsidies, private developers may hesitate to undertake comprehensive urban renewal projects be-cause of the risks involved and the lack of economic incentives for entering into these types of projects. We acknowledge that the tendency to characterize municipal actions as governmental or proprietary influences the outcome of disputes, yet, we feel constrained by the law that defines these functions.

In order for us to find that the City is subject to governmental immunity, we would have to conclude 1) that the loaning of CDBG funds is an act that is enjoined upon the City as part of the State's sovereignty, *and* 2) that the function is to be exercised in the interest of the general public. Both conditions must be met in order to invoke governmental immunity. Additionally, we find a lack of statutory language specifically providing municipalities engaged in providing these types of funds with governmental immunity. Failing to find the above, we conclude that the City engaged in a proprietary act when it loaned the funds to the Developers. Accordingly, the City failed to show it was entitled to governmental immunity as a matter of law. We sustain point one. Having addressed all points of error necessary for disposition of this case, we reverse and remand to the trial court for further proceedings. Tex.R.App.P. 90(a).