William OLDFIELD, Appellant,

v.

The CITY OF HOUSTON, Appellee.

No. 14–98–00840–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 9, 2000.

Rehearing Overruled May 4, 2000.

David W. Waddell, Thomas Michael Pickford, Houston, for appellant.

Electra Elliot, Houston, for appellee.

Panel consists of Justices FOWLER, EDELMAN and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

This is a suit by the City of Houston against William Oldfield for violations of a restrictive covenant. Oldfield appeals from a summary judgment that was granted in the City's favor. The primary issues are (1) whether Oldfield violated certain deed restrictions, (2) whether the City's enforcement of those deed restrictions is a proprietary or governmental function, and (3) if the City's enforcement is proprietary, whether Oldfield has raised a fact issue on his affirmative defenses of waiver, abandonment/changed conditions, and estoppel. We hold that a fact issue exists as to whether Oldfield violated the deed restrictions, that enforcement of the deed restrictions is a proprietary function, and that Oldfield has raised a fact issue as to his defenses of waiver and estoppel. We therefore reverse and remand as to the issues on which Oldfield has raised a genuine issue of material fact, and affirm the judgment in favor of the City of Houston on Oldfield's affirmative defense of abandonment/changed conditions.

## BACKGROUND AND PROCEDURAL HISTORY

This case stems from the City's efforts to enjoin commercial activity on Oldfield's

property. In 1976, Oldfield's father purchased lot 17 on block 2 of the Brookhaven residential subdivision, which is an addition to Houston, Harris County, Texas. Since that year, Oldfield and his father owned and operated a used-machinery business on the property. In the following years, various business-related improvements were made to the property, such as the addition of a large billboard-size sign and a warehouse. During this time-period, Oldfield and his father paid business inventory taxes on equipment owned and located on the property. Oldfield and his father also paid the City commercial rates for utility services to the property. In addition, Oldfield and his father paid the City for permits to operate the signs located on the property which advertise the business. Oldfield inherited the property and the business in 1992, following his father's death.

The Brookhaven subdivision was originally platted in the 1930s, and the subdivision's deed restrictions were properly filed in 1936. The deed restrictions prohibit the use of any property "for business purposes," except for those tracts shown in the original platting "to have exposure or frontage on Holmes Road, which said tract may be used for any lawful business, and the same may be conducted in an orderly manner and shall in no way interfere with the use of adjoining tracts as homes, and does not constitute a nuisance." All other tracts in the Brookhaven subdivision are restricted for use as single-family residences only. Despite these restrictions, there is no evidence in the record of any complaints about Oldfield's business from other Brookhaven residents or from any other entity, including the City.

When the Brookhaven deed restrictions were filed, Oldfield's lot did not have exposure or frontage on Holmes Road. However, in 1962, the southern portion of Houston's Interstate Highway System Loop, or I–610, was built (the "South Loop"). After this construction, Oldfield's property was located on the South Loop's frontage road.

Because of its location on the frontage road, the property, along with its signs and large buildings, can also be seen by motorists traveling on the South Loop.

In March of 1998, the City sued Oldfield to permanently enjoin his operation of the used-equipment sales business and to prevent him from performing any commercial activity on the premises. In response to that suit, Oldfield raised several affirmative defenses, including, but not limited to, laches, waiver, abandonment, and estoppel. Oldfield also argued that, because the construction of the South Loop has given his property exposure to Holmes Road, his business does not violate the deed restriction. Both the City and Oldfield filed cross-motions for summary judgment. On June 18, 1998, the trial court granted the City's motion for summary judgment and entered a permanent injunction against Oldfield and the operation of his business. This appeal followed.

## ISSUES PRESENTED

In his first point of error, Oldfield contends that the trial court erred in denying his motion for summary judgment and in granting the City's motion because the City's suit is barred as a matter of law by his affirmative defenses. Oldfield also raises the following alternative points of error: (1) that the trial court erred in granting the City's motion for summary judgment because genuine issues of material fact exist on whether he violated the deed restriction; and (2) that the trial court erred in granting the City's motion for summary judgment because genuine issues of material fact exist on each element of his affirmative defenses. Oldfield asks that this court reverse the trial court's order and render judgment in his favor. Alternatively, Oldfield requests that the trial court's judgment be set aside, and that this case be remanded for a trial on the merits.

## STANDARD OF REVIEW

Both the City and Oldfield filed their motions for summary judgment under

Rule 166a(c) of the Texas Civil Procedure. The standard for reviewing motions filed under this rule "is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law." *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) (citing *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985)). Under the governing standard, this court must take as true all evidence favorable to the nonmovant and must make all reasonable inferences in the nonmovant's favor as well. *See KPMG Peat Marwick*, 988 S.W.2d at 748; *Nixon*, 690 S.W.2d at 548–49. When a defendant moves for summary judgment on an affirmative defense, he must conclusively prove all the essential elements of his defense as a matter of law, leaving no issues of material fact. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984); *Fernandez v. Memorial Healthcare Sys. Inc.*, 896 S.W.2d 227, 230 (Tex.App.—Houston [1st Dist.] 1995, writ denied). In light of this standard, the issues raised by Oldfield are discussed separately below.

## THE BROOKHAVEN DEED RESTRICTION

■ Oldfield contends that the trial court erred in determining that he violated the Brookhaven deed restriction. The parties point to the following deed restrictions found in the Brookhaven subdivision:

> D. No portion of any of the property shall ever be used for business purposes, except for the tract in the original platting, as shown by map herein referred, to, [sic] to have exposure or frontage on Holmes Road, which said tract may be used for any lawful business, and the same may be conducted in an orderly manner and shall in no way interfere with the use of adjoining tracts as homes, and does not constitute a nuisance. Should any owner of such tract

with exposure or frontage on [Holmes] Road, also own or control an adjoining tract, or any portion thereof, it shall not be construed that same, or any portion thereof may be used for business purpose. Business houses may be built up to the property line on Holmes Road, but shall not be placed nearer the property lines on other streets than the distance hereinabove set out, for each respective street or avenue.

> . . .

> H. Only one main residence for one family occupancy shall be constructed on one tract as shown by original plat of Brookhaven Addition, as recorded Vol. 12, Page 59, Harris County Map and Plat Records. This provision does not apply to the tract fronting on Holmes Road, which has been specifically released to business, unless same is used for residence and not business purposes. The tract fronting on Holmes Road, may be occupied by a business building, and used for business purposes and in addition theretom [sic] a one-family residence.

(CR 49–50). In response to the City's motion for summary judgment, Oldfield presented affidavit testimony that, "[s]ince the construction of the South Loop, [his] property has exposure to [Holmes] Road." Oldfield added that he has "focus[ed][his] advertising signs to expose [his] business to the [Holmes] Road traffic." Oldfield further noted that there have been no complaints about his business from other Brookhaven residents. The City offered no controverting evidence. Oldfield argues that, because his property has "exposure" to Holmes Road, a fact issue exists on whether he violated the deed restriction.

■ In construing a deed restriction, a reviewing court's primary task is to determine the intent of the framers of the restrictive covenant. *See Highlands Management Co. v. First Interstate Bank of Texas, N.A.*, 956 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1997, pet. de-

nied) (citing *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex.1987)). In that regard, we must determine whether the deed restriction is ambiguous. *See, e.g., Wilmoth*, 734 S.W.2d at 657–58. Whether an instrument is ambiguous is a question of law. *See Candlelight Hills Civic Ass'n, Inc. v. Goodwin*, 763 S.W.2d 474, 477 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (citing *Chambers v. Huggins*, 709 S.W.2d 219, 221 (Tex.App.—Houston [14th Dist.] 1986, no writ). An ambiguity in a written document may be either patent or latent. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). A patent ambiguity is one which is evident on the document's face. *See Friendswood*, 926 S.W.2d at 282; *National Union*, 907 S.W.2d at 520. A latent ambiguity exists when a document is "unambiguous on its face, but fails by reason of some collateral matter when it is applied to the subject matter with which it deals." *Friendswood*, 926 S.W.2d at 282; *see also National Union*, 907 S.W.2d at 520. If a document is deemed to be unambiguous, then its construction is also a question of law, and not one of fact. *See Candlelight Hills*, 763 S.W.2d at 474 (citing *Chambers*, 709 S.W.2d at 222). Like any contract, deed restrictions are "unambiguous as a matter of law if [they] can be given a definite or certain legal meaning." *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998) (quoting *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)). On the other hand, a restrictive covenant is ambiguous if it is "susceptible to more than one reasonable interpretation." *Id.* (citing *Grain Dealers*, 943 S.W.2d at 458).

Here, the Brookhaven deed restriction prohibits all of the tracts from being used for business purposes except those lots depicted in the original platting to have "exposure or frontage on Holmes Road." Apparently, Oldfield's lot, as originally platted in 1930, had no exposure to or frontage on Holmes Road. In 1962, however, the South Loop was built through the Brookhaven subdivision. As a result of the South Loop's construction, Oldfield's property now has exposure to Holmes Road. Because the deed restriction does not address the effect of an intervening circumstance, such as the construction of a major interstate highway through the subdivision, the deed restriction "fails by reason of some collateral matter when it is applied to the subject matter with which it deals." *Friendswood*, 926 S.W.2d at 282; *see also National Union*, 907 S.W.2d at 520. We hold, therefore, that, as applied to Oldfield's property, a latent ambiguity exists with respect to the deed restriction's prohibition against use for business purposes. Because we have no evidence as to the framer's intent on this issue—other than the deed restriction itself—we further hold that a fact issue exists as to whether Oldfield's business violates the deed restriction. Because a genuine issue of material fact issue exists on whether Oldfield's property violates the deed restriction, it was error for the trial court to grant the City's motion for summary judgment. Oldfield's second point of error is therefore sustained.

## MUNICIPAL ENFORCEMENT OF DEED RESTRICTIONS

In his motion for summary judgment, Oldfield argued that if his property was in violation of the Brookhaven deed restriction, then the City's enforcement was barred by the defenses of waiver, abandonment, and estoppel. The City, in its motion for summary judgment, argued that Oldfield's affirmative defenses were not applicable to it in this case because it was exercising a governmental function when it sought to enforce the deed restriction. Whether those defenses are applicable turns on whether the City, when it sought to enforce the Brookhaven deed restriction, was performing a governmental or a proprietary function.

■ In certain circumstances, a municipality enjoys immunity from liability and from suit for situations arising from the performance of a governmental function, unless that immunity has been waived. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215 (setting out "municipal liability arising from its governmental functions" under the Texas Tort Claims Act). Similarly, Texas courts have recognized that certain affirmative defenses do not apply where a municipality is exercising a governmental as opposed to a proprietary function. *See, e.g., City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970) (stating the general rule that a unit of government exercising a governmental function is not subject to estoppel); *Waller v. Sanchez,* 618 S.W.2d 407, 409 (Tex. App.—Corpus Christi 1981, no writ) (noting that the equitable doctrine of laches "cannot be asserted against the state or governmental bodies to bar the enforcement of statutes and ordinances"). On the other hand, the doctrine of sovereign immunity does not apply, and a city is subject to affirmative defenses, if a suit concerns the municipality's performance of a proprietary rather than a governmental function. *See, e.g, Roberts v. Haltom City,* 543 S.W.2d 75, 77 (Tex.1976) (applying affirmative defense of estoppel where the city was acting in a proprietary capacity); *City of Corpus Christi v. Gregg,* 155 Tex. 537, 289 S.W.2d 746, 751 (1956) (same).

■ Generally speaking, Texas courts have defined governmental functions as those "public acts which the municipality performs 'as the agent of the State in furtherance of general law for the interest of the public at large.'" *Bailey v. City of Austin,* 972 S.W.2d 180, 193 (Tex. App.—Austin 1998, pet. denied) (citing *Gates v. City of Dallas,* 704 S.W.2d 737, 738 (Tex.1986) (quoting *City of Crystal City v. Crystal City Country Club,* 486 S.W.2d 887, 889 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.)). By contrast, "[a] proprietary function is one performed by a city, *in its discretion,* primarily for the benefit of those within the corporate limits of the municipality rather than for use by the general public." *Bailey,* 972 S.W.2d at 193 (citing *City of Gladewater v. Pike,* 727 S.W.2d 514, 519 (Tex.1987)) (emphasis added). In that regard, actions "undertaken for the benefit of private enterprise or the residents of the municipality rather than for the benefit of the general public" are deemed proprietary. *See Southwest Concrete,* 835 S.W.2d at 731. As we have noted, the "mere fact that a program or project is undertaken for the public health, safety, welfare or morals of the citizenry does not alone deem the action to be governmental rather than proprietary." *Id.* at 732–33.

The Texas Legislature has further defined "governmental functions" as those which are "enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a). "Enjoined," in this context, means "to order, to require, to command, to urge or impose with authority, or positively direct." *Josephine E. Abercrombie Interests, Inc. v. City of Houston,* 830 S.W.2d 305, 308–09 (Tex. App.—Corpus Christi 1992, writ denied) (citing BLACK'S LAW DICTIONARY 276 (5th ed.1979); WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 604 (2d ed.1979)); *see also* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 316 (2d ed. 1995) ("Enjoined," as used by the legislature, means "to prescribe, to mandate, or to order that something be done."). The legislature set out to define governmental acts to "supersede a series of Texas Supreme Court decisions which categorized a municipality's functions as either proprietary or governmental." *Southwest Concrete,* 835 S.W.2d at 730 (discussing Texas Civil Practice and Remedies Code sections 101.0215(a) and (b), which set out nonexclusive lists of activities which are either governmental or proprietary). Examples of enumerated governmental functions include: "police and fire protection and con-

trol"; "health and sanitation services"; "garbage and solid waste removal, collection, and disposal"; "building codes and inspection"; "zoning, planning, and plat approval"; and "water and sewer service." Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a)(1), (2), (6), (28), (29), and (32). On the other hand, proprietary functions are defined as those which a "municipality *may, in its discretion, perform* in the interest of the inhabitants of the municipality...." *Id.* at § 101.0215(b) (emphasis added).[1]

■■■ Based on the foregoing, the key difference between governmental and proprietary functions—both of which are performed by municipalities for the benefit of their citizens—is this: Governmental functions are what a municipality *must* do for its citizens and proprietary functions are what a municipality *may, in its discretion, perform* for its inhabitants. *See Bailey,* 972 S.W.2d at 193; *Southwest Concrete,* 835 S.W.2d at 730–32; *Josephine E. Abercrombie,* 830 S.W.2d at 308.

Here, the City points out that it has the authority to enforce deed restrictions under certain municipal ordinances and provisions found in the Texas Local Government Code, which state as follows:[2]

> The municipality *may* sue in any court of competent jurisdiction to enjoin or abate a violation of a restriction contained or incorporated by reference, in a properly recorded plan, plat, or other instrument that affects a subdivision located inside the boundaries of the municipality.

Tex. Loc. Gov't Code Ann. § 230.003 (Vernon 1999) (emphasis added). Significantly, this provision does not *require* the enforce-

ment of deed restrictions, but merely gives the City the *discretion* to enforce them. Clearly, this language lacks the element of command necessary to require the City to enforce its citizens' private deed restrictions. *See Bailey,* 972 S.W.2d at 193; *Josephine E. Abercrombie,* 830 S.W.2d at 308–09. It follows that, because the City is not *enjoined* or required to enforce deed restrictions, such enforcement is a proprietary function. *See, e.g., City of Houston v. Muse,* 788 S.W.2d 419, 422 (Tex.App.—Houston [1st Dist.] 1990, no writ) (noting that the City's enforcement of a deed restriction "may have been a proprietary function"). Accordingly, Oldfield may assert his defenses against the City just as he would if he were suing a private entity. We will address each of his affirmative defenses in turn to determine if a genuine issue of material fact was raised.[3]

### WAIVER

■■■ We turn first to Oldfield's claim that he has raised a genuine issue of material fact on the doctrine of waiver. To establish waiver, under these circumstances, Oldfield has the burden to show that the City voluntarily and intentionally relinquished its right to enforce the deed restriction. *See Cox v. Melson–Fulsom,* 956 S.W.2d 791, 794 (Tex.App.—Austin 1997, no pet.) (citing *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396, 401 (Tex.1967); *Dempsey v. Apache Shores Property Owners Ass'n,* 737 S.W.2d 589, 595 (Tex.App.—Austin 1987, no writ); *Farmer v. Thompson,* 289 S.W.2d 351, 356 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.)). To meet this burden, Oldfield must show that the violations then existing were "so great

1. By providing this non-exclusive list of proprietary functions, "the Texas Legislature gave deference to the judiciary to interpret what constitutes a proprietary function so long as it was not enumerated under [section 101.0215(a)]." *Southwest Concrete,* 835 S.W.2d at 731.

2. It must be noted that the City of Houston has no comprehensive zoning regulations and

that voters have refused attempts to enact local legislation for that purpose.

3. We do not decide whether laches applies here because Oldfield failed to raise it in his motion for summary judgment. Therefore, he waived any argument on that issue. *See* Tex. R.App. P. 33.1(a).

as to lead the mind of the 'average man' to reasonably conclude that the restriction in question has been abandoned and its enforcement waived." *New Jerusalem Baptist Church, Inc. v. City of Houston,* 598 S.W.2d 666, 669 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ) (citing *Garden Oaks Bd. of Trustees v. Gibbs,* 489 S.W.2d 133 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.)). "Among the factors to be considered by the 'average man' are the number, nature, and severity of the then existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant." *New Jerusalem,* 598 S.W.2d at 669.

The Texas Supreme Court has held that one of the waiver factors, the severity of the violation, may be of such magnitude so as to result in the waiver of a residential-only restriction. In *Sharpstown Civic Association, Inc. v. Pickett,* 679 S.W.2d 956 (Tex.1984), the disputed property, which was subject to a residential-only deed restriction, abutted a two-lane residential street on one side and a four-lane city street on the other. *See id.* at 957. In 1969, the property's owner moved a 12' by 38' one-story wooden building onto the property for use as a real-estate office. *See id.* Also, with no complaints from neighboring homeowners, the owner leased space in the building to an insurance salesman and to an attorney. *See id.* This non-residential use of the property was continuous from 1970 to 1979, when the property was sold. *See id.* The new owner also used the building as an office until April of 1980, when he announced his intention to build a commercial car wash on the property. *See id.* The Texas Supreme Court held that the enforcement of the residential-only deed restriction was waived as to the office building. *See id.* The court limited its holding, however, to enjoin the property owner from conducting

non-residential activities of a "more substantial nature" than that of the office building. *See id.* at 958–59; *see also City of Houston v. Emmanuel United Pentecostal Church, Inc.,* 429 S.W.2d 679, 681–82 (Tex.Civ.App.—Houston [14th Dist.]), *writ ref'd n.r.e.,* 433 S.W.2d 680 (Tex.1968) (per curiam) (involving a residential-only restriction that was waived where a church had operated in a subdivision for four years).

Oldfield's situation is similar to the one found in the *Sharpstown Civic Association* case. Oldfield's property is located on the frontage road to an interstate highway which borders the Brookhaven residential subdivision. Oldfield's used-equipment store includes a large warehouse and a sizeable vertical sign that says, from top to bottom, "4000 South Loop East; BUY; SELL; 1000 TOOLS; ELECTRIC MOTORS; SAWS." Adjacent to Oldfield's sign is a huge billboard which advertises "Shipley Do-nuts." It is undisputed that Oldfield has operated his business on the frontage road for over twenty-two years without a complaint or any attempt to enforce the deed restriction during that time. In *Sharpstown,* the complained of non-residential use was that of a small one-story office building. By comparison, the severity of the deed restriction violation by Oldfield's used equipment store and warehouse is significantly greater than the one found to support a waiver in the *Sharpstown* case. Therefore, we hold that Oldfield has raised a genuine issue of material fact as to whether an "average person" would believe the City has waived enforcement of the deed restrictions.[4]

## ABANDONMENT/CHANGED CONDITIONS

■ We now turn to Oldfield's claim that he was entitled to summary judgment based on the affirmative defense

---

**4.** Of course, any waiver as to Oldfield's current use would not support a waiver of another "more substantial" violation on his lot, or a

waiver of a new violation on any other lot in the Brookhaven subdivision. *See Sharpstown,* 679 S.W.2d at 958–59.

of abandonment. Although Oldfield labels his defense abandonment, he appears to raise instead the defense of changed conditions.[5] To establish that defense, Oldfield must show that "there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant." *Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943, 945 (1958).

Here, Oldfield points out that, after the South Loop's construction, his property was made to abut the feeder road to that interstate. As a result of the construction, Oldfield's property was also exposed to Holmes Road which, according to Oldfield's summary judgment affidavit, is strictly commercial. Oldfield claims that, since construction of the South Loop, the character of the neighborhood surrounding his property has changed from residential to commercial. Oldfield contends therefore that the deed restriction prohibiting the commercial use of his property was abandoned in 1962, following the construction of the I–610 South Loop.

The City contends that Oldfield may not raise the defense of abandonment to complain about "changed conditions" because he acquired the property after the change in conditions occurred. Indeed, Oldfield concedes that his father did not acquire the property and begin his commercial operations until 1976, well after the construction of the South Loop. That being so, Oldfield may not complain of the changes which had already taken place in the area when he acquired the property at issue. *See Lebo v. Johnson,* 349 S.W.2d 744, 750

(Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.) (citations omitted). From this record, we conclude that Oldfield has failed to show that a genuine issue of material fact exists, or that he was entitled to a judgment as a matter of law, on whether a change of condition absolves his subsequent violation, if any, of the Brookhaven deed restriction.

## ESTOPPEL

 Oldfield claims further that he was entitled to summary judgment based on the affirmative defense of estoppel. To prevail on this affirmative defense, Oldfield must demonstrate that a fact issue exists on each of the following elements: (1) a false representation or concealment of material facts; (2) made with actual or constructive knowledge of the facts; (3) to a party without knowledge or the means to obtain knowledge of the real facts; (4) made with the intention that such misrepresentation or concealment should be acted upon; and (5) the party to whom it was made must have relied upon or acted upon it to his prejudice. *See Pebble Beach Property Owners' Ass'n v. Sherer,* 2 S.W.3d 283, 291 (Tex.App.—San Antonio 1999, pet.denied) (citing *Schroeder v. Texas Iron Works,* 813 S.W.2d 483, 489 (Tex. 1991); *Dempsey v. Apache Shores Property Owners Ass'n,* 737 S.W.2d 589, 595–96 (Tex.App.—Austin 1987, no writ)).

Here, Oldfield points out that he and his father continuously used the property for a commercial purpose since the 1970s. Oldfield claims further that, "in reliance on the City's express or implied promise" that it considered the property commercial, he

---

5. The defenses of waiver, abandonment, and "changed conditions" are set out in the Texas Supreme Court's decision in *Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943 (1958). In that case, the court identified two separate defenses to the enforcement of deed restrictions, as follows: (1) where lot owners have acquiesced in "such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it"; and (2) where "there has been such a change of conditions in the

restricted area or [area] surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant." *Id.* at 945. Thus, the defense of "changed conditions" is distinct from the defense of "waiver and abandonment" as it relates to the enforcement of deed restrictions. *See Traeger v. Lorenz,* 749 S.W.2d 249, 250–51 (Tex.App.—San Antonio 1988, no writ). In this instance, Oldfield appears to raise the defense of "changed conditions" under the heading of "abandonment."

and his father performed the following throughout those twenty-two years: (1) paid business inventory taxes on equipment owned or located on the property, (2) paid commercial rates to the City for utility services for the property, and (3) received permits from the City to operate signs located on the property to advertise the business. Oldfield claims that he and his father also made business-related improvements to the property during that time in reliance upon the fact that any enforcement of the deed restriction was waived. Oldfield insists therefore that, because of the City's "actions" or "inaction," it is estopped from enforcing the deed restriction. We hold that this evidence is sufficient to raise a genuine issue of material fact on whether the City, by accepting these fees for over twenty-two years, is estopped from enjoining Oldfield's commercial activity. *See, e.g., City of Corpus Christi v. Gregg*, 155 Tex. 537, 289 S.W.2d 746, 751 (1956) (observing the rule that if a municipality has acted within its powers and has accepted and retained the benefits of that action, and stood by and permitted the other party to spend funds, then the city may be estopped to deny the validity of its conduct).

## CONCLUSION

Oldfield has not demonstrated that he was entitled to summary judgment as a matter of law, and so we decline to render a verdict in his favor. Therefore, we overrule his first point of error. Oldfield has, however, raised a genuine issue of material fact as to whether he violated the Brookhaven deed restriction, and so we sustain his second point of error. Further, because we also hold that material fact issues remain on Oldfield's affirmative defenses of waiver and estoppel, the trial court erred in granting summary judgment in the City's favor. Accordingly, we sustain Oldfield's third point of error to that extent and affirm the trial court's summary judgment in favor of the City on Oldfield's affirmative defense of abandonment/changed conditions. This case is af-firmed in part and reversed and remanded in part for additional proceedings consistent with this opinion.