Affirmed as Reformed and Opinion filed October 23, 2003
















Affirmed as Reformed and
Opinion filed October 23, 2003.                                                 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01132-CV

____________

 

JAMES LEE, GRACE
REAL ESTATE MANAGEMENT, AND GRACE REAL ESTATE MANAGEMENT CORPORATION, Appellants

 

V.

 

ERIC E. PEREZ, Appellee

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from 11th District Court

                                                           Harris
 County, Texas                       

Trial Court Cause
No. 01-50954




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



O P I N I
O N

            Eric Perez leased two lots at 7411
and 7415 Long Point Road in Houston to operate a used car lot.  The “Commercial Lease” he signed was for a
period of three years beginning on March 1, 2000, and limited his use of the
lots to the sale, financing, and insurance of autos.  Two months later, a Houston city attorney sent
a letter informing him he was violating a deed restriction limiting the
property to residential use, and threatening a lawsuit unless he shut down his business
within 15 days.  Perez complied, and then
sued appellants James Lee, Grace Real Estate Management, and Grace Real Estate
Management Corporation for damages.  

            After a bench trial, the trial court
found appellants breached the commercial lease with Perez,[1]
and awarded him $17,605 in actual damages, $12,000 for trial attorney’s fees,
but no fees for this appeal.  Although
appellants requested findings of fact and conclusions of law, they never filed
a notice of past due findings, and thus waived any right to receive them.[2]

The Deed Restriction

            Appellants contend the following
deed restriction did not limit the use of these lots to residential purposes:

All lots in the Addition, except
Lots One (1) through Eleven (11), both inclusive, in Block One (1), shall be
known and described as residential lots. 
No structure shall be erected, altered, placed or permitted to remain on
any residential building plot other than one detached single-family dwelling
not to exceed two stories in height and a private garage for not more than
three cars, and other out buildings incidental to residential use of the
plot.  Business buildings may be
constructed on said Lots One (1) through Eleven (11), both inclusive, in Block
One (1), and such properties may be used only for retail business, professional
offices, and service business, and no noxious or offensive trade or activity
shall be carried on upon said business lots, nor shall anything be done thereon
which may be or may become an annoyance or nuisance to the neighborhood. . . .

The
leased lots were not among those designated for retail business.

            Appellants argue this deed
restriction limits the buildings that
can be constructed but not the activities
that can be conducted on their lots.  But
the provision says these lots “shall be known and described as residential
lots,” limits all buildings on them to residential use, and allows retail
business only on lots other than those involved here.  By statute, we are required to construe this
restrictive covenant liberally to give effect to its purpose and intent.[3]  We hold the deed restriction prohibits use of
the leased property as a used car lot.

            Alternatively, appellants contend
the deed restriction has been waived as a matter of law.[4]  A deed restriction may be waived when the
number, nature, and severity of existing violations would cause a reasonable
person to conclude the restriction had been abandoned.[5]  We must also consider any prior acts of
enforcement.[6]  At trial, there was some anecdotal evidence of
commercial use in the area.[7]  But there is no evidence that would allow a
comparison of the number of non-conforming and conforming uses.[8]  More important, James Lee admitted the prior
tenant of 7415 Long Point left when he also received a letter from the city
objecting to use of the lot for a tire business.  Because there was some evidence this deed
restriction had not been waived, appellants did not establish waiver as a matter
of law.

The Breach

            Appellants assert there is no
evidence they breached the parties’ commercial lease.[9]  Although the lease contains no express
warranty by the landlord concerning the suitability of the property, Texas law
provides an implied warranty that a commercial lease is suitable for the
intended commercial purpose.[10]  Here, the deed restriction discussed above rendered
these lots unsuitable for the purpose designated in the parties’ lease.

            This implied warranty applies only
to latent defects,[11]
which appellants contend this was not.  There
was conflicting evidence whether appellants told Perez about the restriction;
accordingly, we defer to the trial court’s implied conclusion that they did
not.  

            Nevertheless, appellants contend
Perez is charged with constructive notice because the deed restrictions appear
in the county real property records.  Real property records constitute constructive notice to buyers,
but the courts have not generally imposed on others a similar irrebuttable presumption of notice.[12]  Were we to do so,
every prospective tenant would have to obtain a title opinion. We decline appellant’s
invitation to extend the doctrine of constructive notice that far.

            Appellants point to five other
provisions of the lease they say disavow any implied warranty.  First, they point to a provision indicating
the tenant accepted the property “as is.”[13]  Such provisions may indeed waive express or
implied warranties,[14] but
this one did not.  The “as is” clause here
related to the physical condition of the property that a physical examination
would reveal.  The deed restriction here
was not a “condition” of the premises, and would not be disclosed by an
examination of the lots themselves.

            Second, they point to a merger provision
voiding any prior agreements.[15]  But an implied warranty is not a prior
agreement; it is part of the contract itself.[16]  Moreover, the lease itself stated the lots
would be used for a used car business, so no prior understanding was necessary.  While Perez presented evidence about
representations made before the lease was signed, the breach action on which he
recovered relies solely on the lease rather than anything preceding it.

            Third, appellants point to a provision
requiring Perez to “comply with all laws, orders, and requirements of all
governmental entities with reference to the use and occupancy of the leased
premises.”  Assuming this deed
restriction is a requirement of a governmental entity,[17]
it is undisputed Perez did comply by
shutting down his business.  His compliance
hardly excuses appellants’ initial breach of the implied warranty regarding how
the premises could be used.

            Fourth, appellants point to a
provision they say limits Perez’s remedies to terminating the lease or making
repairs for the landlord’s account.[18]  But the lease also provided this remedy was
cumulative rather than preclusive of the tenant’s other rights and remedies.[19]  A cumulative remedy cannot preclude the one
Perez pursued.

            Finally, appellants point out the commercial lease shows
only “Grace Real Estate Management” as landlord; they argue judgment against
any other party was improper.  But at
trial, James Lee admitted he owned the lots, and deeds were introduced proving
that to be so.  Lee also testified he and
his wife were the sole owners, officers, and directors of the corporate
defendant.  There was evidence the
corporation’s charter had been forfeited for failure to pay franchise taxes long
before this lease was signed.[20]  None of the appellants filed a verified
denial that they had been sued in the wrong capacity.[21]  In their motion for new trial, the appellants
themselves alleged that “Defendants” (i.e., all of them) leased the two lots to
Perez.  We hold there was some evidence
justifying a judgment against each of the defendants.

 

 

Attorney’s Fees

            Finally, all parties complain of the
trial court’s award of attorney’s fees. 
Perez claims $12,000 was too small, as his evidence was uncontradicted.[22]  Appellants claim it was too large, as there
was no proof of each of the factors relevant to a reasonable fee.[23]  But no one mentions the statute that
specifically governs contract actions tried to the court, which allows the
trial judge to take judicial notice of the contents of the case file and usual
and customary fees.[24]  In this case, Perez presented expert
testimony that his attorneys’ fees (exceeding $21,000) were reasonable, necessary,
and customary, and tendered timesheets reflecting the time and labor required, as
well as a resume reflecting his attorney’s skill and experience.  But because of the statute, this evidence was
neither necessary nor conclusive.[25]  The statute gave the trial court discretion
to award a reasonable fee regardless of whether either party agreed with it.

            But the same cannot be said of the
denial of all fees to Perez for the services of his attorneys in this appeal.[26]  Perez presented expert testimony that $10,000
was a reasonable fee for an appeal to this court, and $5,000 for an appeal to
the Texas Supreme Court.  While the trial
court had discretion to award a smaller or larger fee, it did not have
discretion to award nothing.[27]  Accordingly, we reform the trial court’s
judgment in accordance with the uncontested evidence to add $10,000 for the
services of Perez’s attorneys in this successful appeal, and $5,000 in the event
appellants make an unsuccessful appeal to the Supreme Court of Texas.

            The judgment of the trial court, as
reformed, is affirmed.

 

 

/s/        Scott Brister

                                                                                    Chief Justice

 

Judgment
rendered and Opinion filed October 23,
 2003.

Panel
consists of Chief Justice Brister and Justices Anderson and Seymore.











[1]
The trial court further found appellants made a negligent misrepresentation to
Perez; however, Perez elected his remedies under the contract cause of action.

 





[2] See Tex. R. Civ. P. 297 (stating party
requesting findings “shall” file notice of past due findings within 30 days of
original request); Chang v. Linh Nguyen, 81 S.W.3d 314, 317 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding failure to file
notice of past due findings waived any error).

 





[3] Tex. Prop. Code § 202.003(a).

 





[4] See Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (“When a party attacks
the legal sufficiency of an adverse finding on an issue on which she has the
burden of proof, she must demonstrate on appeal that the evidence establishes,
as a matter of law, all vital facts in support of the issue.”); see also Oldfield v. City of Houston, 15 S.W.3d 219, 226 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied) (stating party claiming waiver of deed restrictions
has burden of proof).

 





[5] See Oldfield, 15 S.W.3d at 226-27.  We consider only evidence regarding waiver of
this particular restriction rather than the restrictions in general.  See
Jim Rutherford Invs.,
Inc. v. Terramar Beach Cmty. Ass’n, 25 S.W.3d 845, 851 (Tex. App.—Houston
[14th Dist.] 2000, pet. denied). 

 





[6] See Oldfield, 15 S.W.3d at 227.

 





[7]
There was testimony Lee’s wife operated a business next to the two lots here,
that there was a car wash in the same block, and that the block had only one
single-family residence and an apartment complex.  Although not mentioned at trial, we note that
commercial properties in this neighborhood have made frequent appearances in
Texas jurisprudence.  See Amir v. State,
45 S.W.3d 88, 98 (Tex. Crim. App. 2001) (regarding
search of office suite at 6929 Long Point); Carroll
v. State, 701 S.W.2d 913, 915 (Tex. Crim. App.
1986) (regarding obscene magazines sold at bookstore at 7637 1/2 Long Point); Cannady v. State, 582 S.W.2d 467, 468 (Tex. Crim. App. 1979) (regarding narcotics search warrant of
commercial building at 6927 Long Point); R.R.
Street & Co., Inc. v. Pilgrim Enters., Inc., 81 S.W.3d 276, 285 (Tex.
App.—Houston [1st Dist.] 2001, no pet.) (regarding dry-cleaning business at
7430 Long Point); Spring Branch Sav. & Loan Ass'n v. Gerst, 420 S.W.2d 618, 620 (Tex. Civ.
App.—Austin 1967, writ ref’d n.r.e.)
(regarding savings association at 8224 Long Point); Akins v. State, No. C14-89-00684-CR, 1990 WL 168126 (Tex.
App.—Houston [14th Dist.] Nov. 1, 1990, no pet.) (not
designated for publication) (regarding theft at grocery store at 8120 Long
Point).

 





[8] See, e.g., New Jerusalem Baptist Church, Inc. v. City of Houston, 598 S.W.2d
666, 669 (Tex. App.—Houston [14th Dist.] 1980, no writ) (affirming finding that
restriction had not been waived as evidence showed only 4 non-conforming uses
among 169 lots).





 

[9] In
reviewing this issue, we utilize the usual standard of review for legal
sufficiency challenges.  See Latch v. Gratty,
107 S.W.3d 543, 545 (Tex. 2003).

 





[10] See Davidow v. Inwood N. Prof’l Group—Phase I, 747 S.W.2d 373, 377 (Tex.
1988).

 





[11] Id.

 





[12] See HECI Exploration Co. v.
Neel, 982 S.W.2d 881, 887 (Tex. 1998).

 





[13]
Paragraph 8 states in full:

 

CONDITION OF PREMISES.  Tenant has examined and accepts the leased
premises in its present as is condition as suitable for the purposes for which
the same are leased, and does hereby accept the leased premises regardless of
reasonable deterioration between the date of this lease and the date Tenant
begins occupying the leased premises unless Landlord and Tenant agree to
repairs or refurbishment as noted in Special Provisions.

 





[14] See Prudential Ins. Co. of Am. v. Jefferson
Assocs., Ltd., 896 S.W.2d 156, 161 (Tex.
1995).

 





[15] Paragraph
35 states:

 

                PRIOR AGREEMENTS SUPERCEDED.  This agreement constitutes the sole and only
agreement of the parties to this lease and superceded any prior understandings
or written or oral agreements between the parties respecting the subject matter
of this lease.

 





[16] See Parkway Co. v. Woodruff, 901 S.W.2d 434, 439 (Tex.
1995).

 





[17] See Tex.
Loc. Gov’t Code §§ 212.131–.137 (authorizing cities with population of
more than 1.5 million to enforce deed restrictions, and deeming such action a
governmental function).

 





[18]
Paragraph 26 states:

 

DEFAULT BY LANDLORD.  In the event of breach by Landlord of any
covenant, warranty, term or obligation of this lease, then Landlord’s failure
to cure same or commence a good faith effort to cure same within 10 days after
written notice thereof by Tenant shall be considered a default and shall
entitle Tenant either to terminate this lease or cure the default and make the
necessary repairs and any expense incurred by Tenant shall be reimbursed by the
Landlord after reasonable notice of the repairs and expenses incurred.

 





[19] Paragraph
32 states:

 

                RIGHTS AND REMEDIES CUMULATIVE.  The rights and remedies by this lease
agreement are cumulative and the is of any one right or remedy by either party
shall not preclude or waive its right to use any or all other remedies.  Such rights and remedies are given in addition
to any other rights the parties may have by law, statute, ordinance, or
otherwise.

 





[20] See Tex. Tax Code § 171.255(a) (making
officers and directors personally liable for debts created by corporation after
taxes in default).

 





[21] See Pledger
v. Schoelkopf, 762 S.W.2d 145, 146 (Tex 1988)
(holding defendant waived objection that claim belonged to corporation rather
than individual by failure to file sworn denial).

 





[22] See Ragsdale v. Progressive Voters League,
801 S.W.2d 880, 882 (Tex. 1990) (holding award of $150 in election code suit
was an abuse of discretion, as uncontradicted
evidence established reasonable fee of $22,500).

 





[23] See Arthur Andersen & Co. v. Perry Equip.
Corp., 945 S.W.2d 812, 818 (Tex.
1997) (quoting Tex. Disciplinary R.
Prof. Conduct 1.04, reprinted in Tex.
Gov’t Code, tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)).

 





[24] See Tex.
Civ. Prac. & Rem. § 38.004.

 





[25] See Laredo Indep. School
Dist. v. Trevino, 25 S.W.3d 263, 266 (Tex. App.— San Antonio 2000, pet.
denied) (holding factors in Arthur Andersen
inapplicable to contract suit tried to court); Scott A. Brister, Proof of Attorney's Fees in Texas, 24 St. Mary’s L.J. 313, 333-34 (1993)
(noting statute requires no evidence to be offered in contract suit tried to
court).

 





[26] Perez
did not waive this complaint by approving the final judgment as to both form
and substance.  See In re Broussard, 112 S.W.3d 827, 832–33 (Tex.
App.—Houston [14th Dist.] 2003, no
pet. h.).

 





[27] See Ragsdale, 801 S.W.2d at 882 (holding
trial court abused its discretion in awarding $150 for trial fees when uncontradicted evidence established reasonable fee of
$22,500).  A recent case by a panel of
visiting judges in this court suggests the contrary.  See
Anderson, Greenwood & Co. v. Martin, 44 S.W.3d 200, 221 (Tex. App.—Houston
[14th Dist.] 2001, pet. denied) (holding trial court had discretion to award no
appellate fees).  But as the fee claimant
in that case lost on its contract claim, there was no basis for recovering any attorney’s fees—appellate or
otherwise.  See Tex. Civ. Prac. &
Rem. Code § 38.001 (providing for recovery of fees by party with valid contract claim).  As the panel did not distinguish (or even
mention) Ragsdale, and was addressing
a question rendered moot by its dismissal of the contract claim, we instead follow
the holding of the higher court.