**AFFIRM in Part, and REVERSE and REMAND in Part; Opinion Filed May 21, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01096-CV

### BCH DEVELOPMENT, LLC, Appellant
### V.
### LAKEVIEW HEIGHTS ADDITION PROPERTY OWNERS' ASSOCIATION AND BARBARA WOHLRABE, ET AL., Appellees

**On Appeal from the County Court at Law No. 1
Dallas County, Texas
Trial Court Cause No. CC-13-05900-A**

# MEMORANDUM OPINION
Before Justices Myers and Brown[1]
Opinion by Justice Brown

BCH Development, LLC appeals a permanent injunction, granted on motion for summary judgment, prohibiting it from building, on any lot in the Lakeview Heights Addition, a dwelling that has more than one above-ground level or floor of living space or that has a "habitable attic." BCH also challenges a summary judgment against it on its counterclaims against homeowners in the Addition for alleged violations of deed restrictions. BCH raises six issues. For reasons that follow, we affirm in part and reverse and remand in part.

---

[1] Justice David Evans was a member of the panel at the time of oral argument, but is no longer a member of the Court. The case has been decided by the remaining two justices. *See* TEX. R. APP. P. 41.1(b).

BACKGROUND

The Lakeview Heights Addition is a residential neighborhood comprised of the 6100-6300 blocks of Monticello Avenue and the north side of the 6100-6300 blocks of Marquita Avenue in Dallas. There are 104 homes in the Addition and, with one exception, they are all one-story ranch-style houses. Fourteen restrictive covenants for the Addition were filed with the City in 1953. This appeal primarily concerns Covenant 1, which provides:

> 1. No plot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling not to exceed one story in height and a private garage.

BCH is a real estate developer. In June 2013, it purchased the property at 6148 Monticello Avenue. BCH demolished the existing home and posted a City of Dallas permit, issued on September 18, 2013, which indicated there were plans to build a two-story home on the lot. The original construction plans included a "2nd Floor Plan." This second floor living area was to be about 700 square feet and consist of a bedroom, bathroom, and game room.

Shortly after BCH posted its permit, Barbara Wohlrabe, a resident of the Addition, wrote a letter informing BCH that its permit showed it intended to violate the Addition's restrictive covenants by building a two-story home. On October 10, 2013, Wohlrabe and about thirty other residents of the Addition formed the Lakeview Heights Addition Property Owners' Association.[2] A few days later, the Association and Wohlrabe (collectively the Association) filed suit to enjoin BCH from constructing a home with more than one level or floor of living space and asserted claims for breach, anticipatory breach, and repudiation of the restrictive covenants. The trial court granted temporary relief. After the Association questioned BCH's building plans, the plans were

---

[2] According to the Articles of Association, the Association was formed "for the civic betterment and social improvement of life in the Addition, the preservation of the aesthetic and historic appeal of the homes in the Addition, and the preservation of the restrictive covenants."

modified to refer to the second level of living space as a "habitable attic," rather than a second floor.

BCH answered with a general denial and numerous affirmative defenses, including impossibility of performance, waiver, estoppel, and unclean hands. BCH asserted counterclaims against twenty-seven individual members of the Association for alleged breaches of deed restrictions other than Covenant 1. BCH also sought declaratory relief, including a declaration that its construction plans do not violate Covenant 1.

In three separate motions for summary judgment, all twenty-seven individual homeowners moved for summary judgment on BCH's counterclaims for violations of the restrictive covenants. In February 2014, twenty individuals moved for a partial summary judgment, and later five other homeowners moved for a second partial summary judgment. All twenty-five of these homeowners asserted BCH's claims were barred by the statute of limitations. The remaining two counter-defendants, Christopher and Sandy Stillo, filed their own motion for summary judgment on BCH's claim against them. The Stillos asserted their violation had been corrected and BCH was not entitled to monetary damages or attorney's fees. The trial court granted all three motions.

The Association also filed a motion for partial summary judgment. The Association asserted it was entitled to judgment as a matter of law on its claims for BCH's breach of the restrictive covenant. It alleged it was undisputed that BCH intends to construct a house with living space on more than one above-ground floor, in violation of the restrictive covenants. The Association further alleged there was no evidence to support some of BCH's affirmative defenses and that other affirmative defenses failed as a matter of law. The Association asserted that under the property code it was entitled to recover its attorney's fees and expenses. It also asserted it was entitled to a permanent injunction as a matter of law.

In February 2015, the trial court granted the Association's summary judgment motion with the exception of its request for attorney's fees. The court also granted a permanent injunction prohibiting BCH from building a dwelling at 6148 Monticello with more than one above-ground level or floor of living space or with a habitable attic.

In July 2015, BCH asked the court to reconsider its ruling on the Association's motion for partial summary judgment to the extent it rejected BCH's affirmative defense of impossibility. In October 2015, BCH argued it had obtained proof it was impossible for BCH to comply with an approval process set out in the restrictive covenants. BCH moved to dissolve the injunction due to changed circumstances. Covenants 8 through 10 are relevant to BCH's impossibility defense:

> 8. No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the Architectural Control Committee, as to quality of workmanship and materials, harmony of external design with existing structures, and as to location with respect to topography and finish grade elevation. . . . Approval shall be as provided in the following paragraphs.
>
> 9. The Architectural Control Committee is composed of Marshall Matson, M.I. Harris and M.I. Harris, Jr., all of Dallas, Texas. A majority of the committee may designate a representative to act for it. In the event of death or resignation of any member of the committee, the remaining members shall have full authority to designate a successor…. At any time, the then record owners of a majority of the lots shall have the power through a duly recorded written instrument to change the membership of the committee or to withdraw from the committee or restore to it any of its powers and duties.
>
> 10. The committee's approval or disapproval as required in these covenants shall be in writing. In the event the committee, or its designated representative, fails to approve or disapprove within 30 days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenants shall be deemed to have been fully complied with.

BCH argued it had learned all members of the original Architectural Control Committee (ACC) are deceased and no replacements had been named. BCH sought the ACC's approval of its building plans and argued the fact that there were no living ACC members meant its plans were

deemed approved. According to BCH, the injunction was improper and should be dissolved. The trial court denied both the motion to reconsider and the motion to dissolve.

In June 2016, there was a jury trial on the Association's claim for attorney's fees. The jury determined the Association's reasonable attorney's fees through trial were $290,000, with additional amounts for the appeals process. In January 2017, before entry of a final judgment, the Association moved to modify the permanent injunction to extend to all lots in the Addition. The trial court granted the request and amended the injunction in March 2017. In October 2017, the trial court entered a final judgment awarding the Association attorney's fees.[3] This appeal followed.

### A. ENFORCEMENT OF RESTRICTIVE COVENANT 1 AGAINST BCH

BCH brings four issues which challenge the summary judgment and permanent injunction enforcing Covenant 1 against it. When a party seeks an injunction to enforce a restrictive covenant, the movant must prove that the defendant intends to do an act that would breach the covenant. *Marcus v. Whispering Springs Homeowners Ass'n*, 153 S.W.3d 702, 707 (Tex. App.—Dallas 2005, no pet.). We review the grant of a permanent injunction for an abuse of discretion. *Lagos v. Plano Econ. Dev. Bd., Inc.*, 378 S.W.3d 647, 650 (Tex. App.—Dallas 2012, no pet.). The standard of review becomes somewhat more complex when, as here, the request for injunctive relief is granted pursuant to a grant of summary judgment. *Id.* With the standards of review for injunctive relief and for summary judgment in mind, we must consider all of the summary judgment evidence to determine whether the trial court clearly abused its discretion by granting the permanent injunction. *Id.*

---

[3] Prior to the final judgment, the trial court granted the Association's motion for new trial. BCH filed a petition for writ of mandamus with this Court. We determined that none of the reasons specified for ordering a new trial legally supported such relief and directed the trial court to vacate its order granting a new trial. *See In re BCH Dev., LLC*, 525 S.W.3d 920 (Tex. App.—Dallas 2017, orig. proceeding).

### 1. Impossibility of Performance/Changed Circumstances

In its first issue, BCH contends the trial court erred in granting summary judgment for the Association because there was a fact issue on BCH's affirmative defense of impossibility. It is undisputed that all members of the ACC are deceased and were not replaced. BCH argues that because there is no ACC—"the only entity vested with authority to approve or disapprove building plans to their level of conformity with the aesthetic of the Addition"—the deed restrictions are unenforceable against BCH.

Under the doctrine of impossibility of performance, a party's performance under a contract is discharged or excused when supervening circumstances make the performance impossible or impracticable. *Garcia v. Baumgarten*, No. 03-14-00267-CV, 2015 WL 4603866, at \*5 (Tex. App.—Austin July 30, 2015, no pet.) (mem. op.); *see Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992). The impossibility defense generally applies in situations involving the death or incapacity of a person necessary for performance. *Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332, 340 (Tex. App.—Eastland 2009, no pet.).

BCH relies on a case from the Third District Court of Appeals in support of its argument that it was impossible for it to comply with the restrictive covenants. *See Hollis v. Gallagher*, No. 03-11-00278-CV, 2012 WL 3793288 (Tex. App.—Austin Aug. 28, 2012, no pet.) (mem. op.). The covenant at issue in *Hollis* prohibited two-story dwellings without the consent of the developers of the subdivision. *Id.* at \*1. At the time the Gallaghers sought to build a two-story house in the subdivision, both developers had died. *Id.* at \*1–2. The court of appeals determined the unambiguous language of the covenant required the developers' consent without providing an alternative person or entity to consent if the developers are unavailable. The court held the Gallaghers conclusively established an impossibility defense. *Id.* at \*5–7. BCH argues that we should reach the same result in this case because the ACC members are dead and there is no

alternative method for plan approval. But there is a significant difference in the language of the restrictive covenants in the two cases. In *Hollis*, the approval of the developers was expressly required to build a two-story house. Here, the deed restrictions do not include a method for obtaining permission to build a house that is more than one story. There is an outright ban on buildings more than one story in height. Language requiring approval of the ACC is found in Covenants 8, 9, and 10. Covenant 8 provides that no building shall be erected until the construction plans and specifications have been approved by the ACC. The Association is not enforcing Covenant 8 against BCH; it does not seek to prohibit BCH's construction plans on grounds BCH did not obtain ACC approval. We conclude the impossibility defense does not apply under the facts of this case. It was not impossible for BCH to comply with Covenant 1. The trial court did not err in granting summary judgment for the Association on this issue. We overrule BCH's first issue.

We address BCH's sixth issue out of order because it presents a related question. In issue six, BCH argues the trial court abused its discretion when it denied BCH's motion to dissolve the injunction due to changed circumstances. According to BCH, because it got no response from the ACC when it sought approval of its plans, its constructions plans were deemed approved, and the trial court should have dissolved the injunction.

A trial court may modify a permanent injunction upon a showing of changed circumstances. *Smith v. O'Neill*, 813 S.W.2d 501, 502 (Tex. 1991) (orig. proceeding) (per curiam). The party seeking modification has the burden of demonstrating that circumstances require modification of the injunction. *In re A.G.F.W.*, No. 06-12-00111-CV, 2013 WL 2459886, at *3 (Tex. App.—Texarkana June 6, 2013, no pet.) (mem. op.). We review the trial court's ruling on a requested modification for an abuse of discretion. *Schuring v. Fosters Mill Village Cmty. Ass'n*, 396 S.W.3d 73, 76 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

BCH has not demonstrated that changed circumstances warranted dissolution of the injunction. BCH's first amended answer demonstrates it was aware in November 2013 that the ACC members were deceased and had not been replaced. BCH waited until October 2015 to claim that circumstances had changed due to the deemed approval of its plans. The trial court could have reasonably concluded there were no changed circumstances. Further, as discussed above, BCH could not have obtained permission from the ACC to build a home more than one story in height. So any "deemed approval" of its building plans is irrelevant on the height issue. The trial court did not abuse its discretion in denying BCH's motion to dissolve the injunction. We overrule BCH's sixth issue.

## 2. Is Restrictive Covenant 1 Ambiguous?

In its second issue, BCH maintains Covenant 1 is ambiguous. It asserts the term "one story in height" is susceptible to more than one reasonable interpretation. BCH argues that as a result, the covenant should be strictly construed in favor of BCH's free use of its property.

We review a trial court's interpretation of a restrictive covenant de novo. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 279 (Tex. 2018). Restrictive covenants are subject to the general rules of contract construction. *Id.* at 280 (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). Whether a restrictive covenant is ambiguous is a question of law for the court to decide by looking at the covenants as a whole in light of the circumstances present when the parties entered the agreement. *Id.* Covenants are unambiguous as a matter of law if they can be given a definite or certain legal meaning. Covenants are ambiguous if they are susceptible to more than one reasonable interpretation. Mere disagreement over the interpretation of a restrictive covenant does not render it ambiguous. *Id.* A paramount concern when construing covenants is giving effect to the objective intent of the drafters of the covenant as it is reflected in the language chosen. Courts must give the words used the meaning which they commonly held as

of the date the covenant was written, not as of some subsequent date. Moreover, the words in a covenant may not be enlarged, extended, stretched, or changed by construction. *Id.* And courts should avoid any construction that nullifies a restrictive covenant provision. *Id.* When a contract leaves a term undefined, we presume that the parties intended its plain, generally accepted meaning. *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). Accordingly, we give the term its ordinary meaning. *Id.* Often we consult dictionaries to discern the natural meaning of a common-usage term not defined by the contract. *Id.*

In its motion for summary judgment, the Association asserted that the phrase "not to exceed one story in height" can be given a certain meaning and is not ambiguous. According to the Association, the terms "story" and "height" are both common-usage terms. It provided dictionary definitions from the 1940s and 1950s to show the meaning of those terms at the time the deed restrictions were drafted. "Story" was defined as "[a] set of rooms on the same floor or level; a floor, or the habitable space between two floors." *Story*, WEBSTER'S NEW INT'L DICTIONARY (2nd ed. 1956). "Height" had several definitions, including: (1) "The quality or condition of being high;" (2) "That which is elevated;" and (3) "The distance to which anything rises above its foot, above that on which it stands, above the earth, the level of the sea, or the horizon, altitude, specif., the measure upward from a surface, as the floor or the ground." *Height*, WEBSTER'S NEW INT'L DICTIONARY (2nd ed. 1956). The Association argued that it does not matter whether BCH calls the second level of living space a "second floor" or a "habitable attic," it is still a second level of above-ground living space and thus the house exceeds one story in height.

As stated, BCH argues that restrictive Covenant 1 is ambiguous. It maintains there is more than one reasonable interpretation of the term "story." It also argues that the Association's interpretation of the term "one story in height" ignores the phrase "in height." It asserts the language prohibiting a dwelling that exceeds one story in height does not prohibit a dwelling with

more than one story of living space. According to BCH, the purpose of Covenant 1 was to restrict the height of the exterior of homes within the Addition, not to regulate how homeowners use the interior of their homes. BCH asserts that if the area in dispute was unfinished, but the design and height were the same, the house would be one story and there would be no violation of Covenant 1. It also asserts the Association's interpretation of "story" ignores Texas case law.

In 1973, this Court decided a case involving a 1950's deed restriction prohibiting dwellings that exceeded "one and one-half (1-1/2) story in height." *See Johnson v. Linton*, 491 S.W.2d 189, 191 (Tex. App.—Dallas 1973, no writ). The Johnsons remodeled their property to add two rooms and a bath above their garage. *Id.* Their neighbors alleged the Johnsons were in violation of the restrictive covenant and sought a permanent injunction. At a bench trial, experts for both sides testified about whether the Johnsons' house as remodeled was one-and-a-half stories or two stories. *Id.* at 192–93. The trial court concluded that the phrase "shall not exceed one and one-half stories in height" was not ambiguous. *Id.* at 193. The court determined that the Johnsons' home constituted a dwelling in excess of one-and-a-half stories in height and ordered them to remove the second story. *Id.* We reversed. This Court's primary holding focused on the fact that, in accordance with another restrictive covenant, the Johnsons' plans were preapproved by the architectural committee. *Id.* at 196. The committee consisted solely of the president of the corporation that started the subdivision and that man had drafted the restrictive covenants and lived in the neighborhood. *Id.* at 194–96. We determined that it was "unreasonable to assume that [he] would approve plans for an alteration which would have violated the very restrictions he caused to be drafted." *Id.* at 196. In the alternative, this Court held that the phrase "shall not exceed one and one-half story in height" was ambiguous as a matter of law. *Id.* We stated the ambiguity was illustrated by the fact that the experts who testified each had his own idea about what the phrase

meant. *Id.* at 197. We reasoned that the trial court should have resolved the ambiguity in favor of the Johnsons' free use of their property. *Id.*

BCH argues that, as in *Johnson*, experts for both sides testified (at the temporary injunction hearing and in affidavits) about whether BCH's building plans violated Covenant 1. It asserts this difference of opinion demonstrates the ambiguity of the deed restriction, and the ambiguity should be resolved in favor of BCH's free use of the property. In *Johnson*, however, the ambiguity arose not from the "story in height" language, but from the uncertainty about the meaning of a "half story." *See id.* at 192 (summarizing expert testimony); *see also Roberts v. Henson*, 72 N.E.3d 1010, 1029 (Ind. Ct. App. 2017) (restriction against dwelling not to exceed one and one-half story in height is less clear than limitation of one or two stories; whether structure violates such a restriction is fact question). As a result, *Johnson* has little application in this case.

This issue can be resolved from the plain language of Covenant 1. The restrictive covenants do not define the terms "story" or "one story in height." We must give those words the meaning which they commonly held as of the date the covenant was written. *See Tarr*, 556 S.W.3d at 290. We conclude the phrase "not to exceed one story in height" is unambiguous.[4] The term "story" refers to the habitable space between two floors and "height" refers to the measure upward from the ground. The one story in height restriction limits homes in the neighborhood to one story, as that term is commonly understood, not necessarily to a specific numeric height. *See Price v. Kravitz*, No. 1 CA-CV 10-0889, 2012 WL 1380269, at *3 (Ariz. Ct. App. Apr. 19, 2012) (not

---

[4] To show there is more than one reasonable interpretation of "story," BCH also relies on definitions for the terms "story," "attic," "attic story," and "habitable attic" found in the 1951 Dallas Building Code and the 2012 and 2015 International Residential Codes (IRC). Although BCH did not cite these codes or definitions in its response to the Association's motion for summary judgment, in recent opinions the Texas Supreme Court has stated that although appellate courts do not consider *issues* that were not raised below, the parties are free to construct new *arguments* in support of issues properly before the court. *See Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 n.5 (Tex. 2017); *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014). Even so, we do not consider the IRC definitions from 2012 and 2015 because they are not relevant to the deed restrictions drafted in the 1950s. As for the building code, BCH argues that its definition of "attic story" shows that an "attic story," such as the one it seeks to build in this case, is different from a "story." The code defined "attic story" as "[a]ny story situated wholly or partly in the roof, so designated, arranged or built as to be used for business, storage or habitation." We are not persuaded by this argument. The restrictive covenants say nothing about an attic story. Had the developers of the Addition wanted to allow attic stories, they could have done so in the restrictions. Further, this type of living space, by its own definition, is a separate floor of living space, and a dwelling with an attic story would be more than one story.

designated for publication). Courts from other jurisdictions have reached similar conclusions. *See, e.g., id.* (common usage of "one story in height" is sufficiently clear to permit enforcement and prohibit "finished attics"); *Kamphaus v. Burns*, No. 279962, 2009 WL 485281, at \*5 (Mich. Ct. App. Feb. 26, 2009) (per curiam) (not designated for publication) (restriction against dwellings exceeding two stories in height was story restriction, not height restriction); *Dickstein v. Williams*, 571 P.2d 1169, 1171 (Nev. 1977) (nothing ambiguous in meaning of "one story in height"); *Pool v. Denbeck*, 241 N.W.2d 503, 506 (Neb. 1976) (covenant prohibiting dwellings not to exceed two stories in height was not ambiguous); *McDonough v. W.W. Snow Constr. Co.*, 306 A.2d 119, 123 (Ver. 1973) (covenant limiting house to one story in height is clear on its face); *King v. Kugler*, 197 Cal. App. 2d 651, 655 (Cal. Ct. App. 1961) (nothing ambiguous in meaning of phrase "one story in height"); *but see Allen v. Reed*, 155 P.3d 443, 445–46 (Colo. App. 2006) (covenant prohibiting houses exceeding "one story in height above finished grade" was ambiguous for failure to prescribe any numerical measure for maximum height); *Hiner v. Hoffman*, 977 P.2d 878, 880–81 (Haw. 1999) (restrictive covenant prohibiting dwellings that are more than two stories in height was ambiguous because it failed to specify maximum height of story). Because we conclude that Covenant 1 is unambiguous, we need not resolve the parties' disagreement over whether the covenant is to be strictly construed or liberally construed. *See Tarr*, 556 S.W.3d at 279–85 (recognizing potential conflict between common-law principles of interpreting restrictive covenants and section 202.003(a) of property code, which calls for restrictive covenants to be liberally construed); *see also* TEX. PROP. CODE ANN. § 202.003(a).

In reaching our conclusion that Covenant 1 is unambiguous, we have not considered the expert testimony on the meaning of "one story in height." Extrinsic evidence can be considered only to interpret an ambiguous writing, not to create ambiguity. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015); *see West v. Quintanilla*, No. 17-0454, 2019 WL 1495093, at \*4

n.11 (Tex. Apr. 5, 2019); *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 169–70 (Tex. 2009). Neither side argues that this is a circumstance involving "the commonly understood meaning in the industry of a specialized term," which may be proved by extrinsic evidence such as expert testimony. *See, e.g., Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc.*, 56 S.W.3d 313, 324–25 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (expert's affidavit, offered to show commonly understood meaning of "formation" as used in "Blowout Insurance Policy" obtained by oil and gas drilling contractor, was admissible summary judgment evidence); *see also Holmesley v. Walk*, 39 S.W.3d 463, 467 (Ark. Ct. App. 2001) (expert opinions on meaning of "two story" were unnecessary). Nor do we consider it to be.

In *Tarr*, in considering whether a restrictive covenant was ambiguous, the supreme court recently distinguished between an ambiguous word or phrase and a vague word or phrase. *Tarr*, 556 S.W.3d at 290. "A word or phrase is ambiguous when the question is which of two or more meanings applies; it is vague when its unquestionable meaning has uncertain application to various factual situations." *Id.* (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 31–32 (2012)). If a court can assign a meaning to the phrase at issue, the term is not rendered ambiguous solely because the application of "its unquestionable meaning" to a certain factual situation is uncertain or vague. *Id.* We think the meaning of the term "dwelling not to exceed one story in height" is unquestionable. It is a home in which there is living space on only one level upward from the ground. BCH's argument about the term's ambiguity does not stem from confusion about the meaning of the words at issue. Its argument arises from application of its unquestionable meaning to various factual scenarios.

For this reason, we are not persuaded by *Morton v. Paradise Cove Property Owners Association*, No. 11-08-00022-CV, 2009 WL 2841208 (Tex. App.—Eastland Sept. 3, 2009, no pet.). *Morton* involved a deed restriction which provided that homes in one block of a subdivision,

which were on the waterfront, "will be single story only." A homeowner sued the POA alleging the POA violated the deed restriction by allowing two homes on that block that were more than one story. *Id.* at *1. The homes both had attic space that had been converted into "some form of usable space;" one had a second floor living area and the other had a loft. *Id.* at *4. The court of appeals concluded that the homes complied with the one-story restriction because they appeared to be one story from the outside. *Id.* at *5. Because this conclusion did not result from any analysis of the plain "single story" language of the restriction, we do not reach a similar result. The trial court did not err in concluding that Covenant 1 was unambiguous and enforcing it against BCH. We overrule BCH's second issue.

### 3. BCH's Other Affirmative Defenses

In its third issue, BCH contends the trial court erred in granting summary judgment against it on its affirmative defenses of waiver, estoppel, and unclean hands. We first address waiver. Anticipating that BCH would rely on waiver to avoid summary judgment, the Association asserted it was entitled to judgment as a matter of law on BCH's affirmative defense of waiver. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (if party opposing summary judgment relies on affirmative defense, to avoid summary judgment, it must come forward with evidence to raise issue of fact on each element of defense). The Association argued that the facts regarding waiver were clearly established. The parties agree there is one two-story home in the Addition on the lot next to BCH's property. The Association maintains that, as a matter of law, one home out of 104 cannot establish waiver; in other words, it is still possible to realize to a substantial degree the benefits intended through Covenant 1. In addition, the Association relied on evidence that Wohlrabe previously took steps to prevent modification of the story restriction and that BCH believed Covenant 1 was still in effect.

BCH maintains it raised genuine issues of material fact as to waiver. It argues the Association waived its right to enforce restrictive Covenant 1 against BCH because there were prior violations of the covenants in the neighborhood more severe than the alleged violation in BCH's building plans. BCH argues the prior two-story house alone supports its waiver defense. But it also contends the Association cannot enforce Covenant 1 because it did not object to prior violations of Covenants 3, 5, and 7.

Waiver is the voluntary relinquishment of a known right. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 851 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Restrictive covenants may be waived, and waiver is ordinarily a question of fact. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996); *Nolan v. Hunter*, No. 04-13-00072-CV, 2013 WL 5431050, at *5 (Tex. App.—San Antonio Sept. 25, 2013, no pet.) (mem. op.). Where the facts and circumstances are admitted or clearly established, however, the question becomes one of law. *Tenneco*, 925 S.W.2d at 643. To establish waiver in a deed restrictions case, the nonconforming user must prove that violations then existing are so great as to lead the mind of the "average man" to reasonably conclude that the restriction in question has been abandoned and its enforcement waived. *Hicks v. Loveless*, 714 S.W.2d 30, 35 (Tex. App.—Dallas 1986, writ ref'd n.r.e.); *Forest Hills Improvement Ass'n v. Flaim*, No. 09-15-00478-CV, 2017 WL 5179968, at *4 (Tex. App.—Beaumont Nov. 9, 2017, no pet.) (mem. op.); *EWB-I, LLC v. PlazAmericas Mall Tex., LLC*, 527 S.W.3d 447, 466 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Among the factors to be considered by the average man are the number, nature, and severity of the then existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *Hicks*, 714 S.W.2d at 35.

We first address BCH's contention that it raised a fact issue on waiver by showing there were violations of Covenants 3, 5, and 7 in the Addition. Covenant 3 contains restrictions on where a building can be located on a lot. For example, "No building shall be located on any lot nearer than 30 feet to the front lot line, or nearer than 10 feet to any side street line." Covenant 5 prohibits dwellings constructed of materials other than brick or stone veneer. Covenant 7 prohibits use of structures of a "temporary character," trailer, basement, tent, shack, garage, barn, or "other outbuilding" as a temporary or permanent residence.

In determining whether deed restrictions have been waived, we look at each covenant separately. The deed restrictions for the Addition contain a severability clause. The clause provides, "Invalidation of any one of these covenants . . . shall in no wise affect any of the other provisions which shall remain in full force and effect." Further, these restrictions serve different purposes, and a waiver of one restriction does not constitute a waiver of another. *See Tanglewood Homes Ass'n v. Henke*, 728 S.W.2d 39, 43 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). We cannot consider the alleged waiver of deed restrictions other than Covenant 1 in analyzing the waiver issue. *See Lee v. Perez*, 120 S.W.3d 463, 466 n.5 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Jim Rutherford*, 25 S.W.3d at 851. Accordingly, in analyzing whether the Association waived its right to enforce restrictive Covenant 1 against BCH, we look only to evidence of one existing two-story home in the Addition.

The issue then is whether one violation of restrictive Covenant 1 in an Addition with 104 houses raises a fact issue on waiver. The Association argues that this violation rate—less than 1%— is not so great as to lead the mind of an average man to reasonably conclude that the covenant has been abandoned. In its brief, the Association quotes from an opinion of one of our sister courts of appeals: "Texas courts have found that violation rates ranging from 1.9% to 8.9% were not sufficient to support waiver and abandonment." *Uptegraph v. Sandalwood Civic Club*, 312

S.W.3d 918, 935–36 (Tex. App.—Houston [1st Dist.] 2010, no pet.). *Uptegraph* was a bench trial, however, and the issue before the court of appeals was whether there was sufficient evidence to support the trial court's finding that Sandalwood did not waive the right to enforce its restrictive covenants. *Id.* at 932, 936. The vast majority of Texas cases dealing with the issue of waiver of a restrictive covenant are not summary judgment cases. *See, e.g., Nolan*, 2013 WL 5431050 (jury trial); *Moran v. Mem'l Point Prop. Owners Ass'n*, 410 S.W.3d 397 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (bench trial); *Musgrove v. Westridge St. Partners I, LLC*, No. 2-07-281-CV, 2009 WL 976010 (Tex. App.—Fort Worth Apr. 9, 2009, pet. denied) (mem. op.) (bench trial); *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283 (Tex. App.—San Antonio 1999, pet. denied) (bench trial); *Dempsey v. Apache Shores Prop. Owners Ass'n*, 737 S.W.2d 589 (Tex. App.—Austin 1987, no writ) (jury trial); *Tanglewood Homes*, 728 S.W.2d at 43 (jury trial); *New Jerusalem Baptist Church, Inc. v. City of Houston*, 598 S.W.2d 666 (Tex. App.—Houston [14th Dist.] 1980, no writ) (bench trial); *Zent v. Murrow*, 476 S.W.2d 875, 880 (Tex. App.—Austin 1972, no writ); *but see Jim Rutherford*, 25 S.W.3d at 851–52 (upholding no-evidence summary judgment on affirmative defense of waiver because one violation of setback restriction is not so great as to lead mind of average man to reasonably conclude enforcement of restriction had been waived).[5]

Waiver in restrictive covenant cases is a fact-intensive inquiry involving multiple factors. *Nolan*, 2013 WL 5431050, at *7. A statistical analysis is but one component in determining the issue of waiver. *See id.* Also relevant are the nature and severity of existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. There are some instances in which this issue

---

[5] We note that the cases cited in the *Jim Rutherford* opinion in support of the conclusion that one violation did not amount to a waiver were not summary judgment cases. *See Jim Rutherford*, 25 S.W.3d at 851–52 (citing *Tanglewood Homes*, 728 S.W.2d at 44; *New Jerusalem, 59*8 S.W.2d at 852).

has been determined as a matter of law. *See, e.g., Forest Hills*, 2017 WL 5179968, at \*4–5 (although in bench trial factfinder found waiver of right to enforce setback restriction, court of appeals held no waiver as matter of law where there was no evidence of other violations of setback restriction, only violations of other restrictions). Here, the Addition is located on three blocks of two streets. There is one other two-story house, converted to two stories in 2004, and it is located right next to BCH's property. Under the facts of this case, we conclude analysis of the relevant factors, especially whether it is still possible to realize to a substantial degree the benefits intended through the covenant, is an issue for a factfinder and cannot be made as a matter of law. *See Oldfield v. City of Houston*, 15 S.W.3d 219, 227 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), *superseded by statute on other grounds as recognized in Truong v. City of Houston*, 99 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (appellant raised genuine issue of material fact as to waiver of enforcement of residential use restriction where evidence showed one business had operated in subdivision). We sustain BCH's third issue involving its affirmative defense of waiver.

BCH next contends the trial court erred in granting summary judgment for the Association on BCH's quasi-estoppel defense. Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000); *Jamison v. Allen*, 377 S.W.3d 819, 823 (Tex. App.—Dallas 2012, no pet.). It will apply when a party knowingly acts or conducts himself in a particular manner and then takes a position inconsistent with that act or conduct. *Jamison*, 377 S.W.3d at 823. BCH contends the Association is estopped from enforcing Covenant 1 because it has permitted deed restriction violations for many years and most homeowners violated one or more of the restrictions. As with the waiver defense, given the severability of the covenants, any acquiescence to violations of covenants other than Covenant 1 is not evidence that the homeowners

are estopped from enforcing Covenant 1. *Cf. id.* at 824 (plaintiffs were estopped from complaining that neighbors used unapproved material on exterior walls when plaintiffs used same unapproved materials). BCH argues that the Association is estopped from enforcing the one-story restriction because it permitted "all manner of deed restriction violations." In contrast to its argument regarding waiver, BCH does not argue that the Association is estopped based solely on the one two-story home. We cannot conclude the trial court erred in granting summary judgment for the Association on quasi-estoppel.

BCH also contends the trial court erred in granting summary judgment for the Association on BCH's affirmative defense of unclean hands. Under the doctrine of unclean hands, a court may refuse to grant equitable relief, such as an injunction, sought by "one whose conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated principles of equity and righteous dealing." *Park v. Escalera Ranch Owners' Ass'n*, 457 S.W.3d 571, 597 (Tex. App.—Austin 2015, no pet.). In restrictive covenant cases, the doctrine applies only "when the plaintiff is guilty of the same actions of which the defendant is accused." *Id.* In addition, the party claiming unclean hands bears the burden to show it was injured by the other party's unlawful or inequitable conduct. *Id.* Here, given the severability of the deed restrictions, we question whether the homeowners are guilty of the "same actions" of which BCH is accused. Even so, BCH makes no attempt to show that it was injured by the homeowners' violations of other restrictive covenants. As such, it has not shown the trial court erred in granting summary judgment on this defense. We overrule BCH's third issue as to estoppel and unclean hands.

### B. BCH'S COUNTERCLAIMS FOR OTHER HOMEOWNERS' ALLEGED VIOLATIONS OF RESTRICTIVE COVENANTS

BCH's remaining issues challenge the trial court's summary judgment in favor of the twenty-seven individual members of the Association on BCH's counterclaims for alleged

violations of restrictive covenants. In its fourth issue, BCH contends the trial court erred in granting summary judgment on limitations grounds. Twenty-five of twenty-seven individual homeowners moved for summary judgment on grounds that BCH's claims were barred by limitations.

Actions to enforce restrictive covenants are governed by a four-year statute of limitations. *Air Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 911 (Tex. App.—Dallas 2003, no pet.). The statute accrues upon breach of the covenant. *Colton v. Silsbee State Bank*, 952 S.W.2d 625, 630 (Tex. App.—Beaumont 1997, no pet.). Twenty-five owners maintained that BCH's claims for alleged violations were barred because the violations occurred more than four years before BCH filed its counterclaims.

BCH does not dispute that the alleged violations occurred more than four years before it filed its counterclaims. It argues that section 16.069 of the civil practice and remedies code revived its claims. Section 16.069(a) provides that if a counterclaim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim even though as a separate action it would be barred by limitations on the date the party's answer is required. TEX. CIV. PRAC. & REM. CODE ANN. § 16.069(a). The counterclaim must be filed not later than the thirtieth day after the date on which the party's answer is required. *Id.* § 16.069(b). Section 16.069 is intended to prevent a party from waiting until an opponent's valid claim, arising out of the same transaction or occurrence, is time-barred before asserting its own claim. *Ramsland v. WFW Family, LP*, No. 05-17-00326-CV, 2018 WL 1790080, at *5 (Tex. App.—Dallas Apr. 16, 2018, pet. denied) (mem. op.). For a counterclaim to arise out of the same transaction or occurrence as the original claim, there must be a "logical relationship" between the claims. *Id.* The essential facts on which the counterclaim is based must be significantly and logically relevant to both claims. *Id.*

–20–

The issue is whether BCH's claims for violations of the deed restrictions arise out of the same transaction or occurrence as the Association's claims. BCH's counterclaims were for violations of Covenants 3, 5, 7, and 13. As previously mentioned, Covenant 3 contains restrictions on where a building can be located on a lot, Covenant 5 prohibits dwellings constructed of materials other than brick or stone veneer, and Covenant 7 prohibits use of certain structures as a residence. Covenant 13 provides that trash, garbage, or other waste shall not be kept except in sanitary containers.

BCH relies on a case from the Fourth District Court of Appeals, *Fallis v. River Mountain Ranch Property Owners Association*, No. 04-09-00256-CV, 2010 WL 2679997 (Tex. App.—San Antonio July 7, 2010, no pet.) (mem. op.), also involving restrictive covenants. The court of appeals determined the plaintiff did not prove as a matter of law that the defendants' counterclaims were barred by limitations due to the application of section 16.069. *Id.* at *7–8. But *Fallis* is distinguishable. Both sides' claims involved the same property—postal mailboxes and a structure over the mailboxes—and the facts underlying both parties' actions were closely related. *Id.* at *7. Here, the Association sued BCH for violation of restrictive Covenant 1 at 6148 Monticello. BCH's counterclaims are for alleged violations of restrictive covenants 3, 5, 7, and 13 at sixteen other addresses within the Addition. There is no logical relationship between the plaintiffs' claims for violations of a height restriction at one location and BCH's counterclaims for unrelated violations at other locations. BCH's counterclaims do not arise out of the same transaction or occurrence. In addition, there no evidence the Association waited to bring its claims until BCH's were time-barred. The trial court properly granted summary judgment on this issue. We overrule BCH's fourth issue.

In its fifth issue, BCH contends the trial court erred in granting summary judgment for the remaining two homeowners, the Stillos, on BCH's claims for a declaratory judgment and

attorney's fees. In November 2013, BCH first alleged that the Stillos were in violation of restrictive Covenant 5 because they had wood siding on their home at 6303 Monticello Avenue. BCH sought a declaration that the property located at 6303 Monticello Avenue, and others in the Addition, "all violate covenant No. 5 of the Deed Restrictions" for the Addition. In June 2014, the Stillos moved for summary judgment on grounds there was no justiciable controversy between the parties. Their summary judgment evidence showed they added a laundry room to their house in 2011. Unaware there was a restriction against use of exterior building materials other than brick or stone, the Stillos used wood siding on the room's exterior. Prior to naming the Stillos as counterdefendants, BCH had no communication with them about the violation. Shortly after BCH filed its claim against them, the Stillos replaced the wood siding with brick. In their summary judgment motion, they argued that because they were no longer in violation of the deed restriction, they were entitled to judgment as a matter of law because there is no justiciable controversy. In other words, they argued BCH's claim for declaratory judgment is moot. They also moved for summary judgment on BCH's claim for attorney's fees under the Declaratory Judgments Act on grounds that the filing and prosecution of the suit against them was not necessary, therefore any attorney's fees incurred by BCH were not necessary or reasonable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 ("In any proceeding under [the Declaratory Judgments Act], the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). The trial court granted the Stillos' motion for summary judgment.

The purpose of the Declaratory Judgments Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *Id*. § 37.002(b). A declaratory judgment is proper only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). Declaratory relief is not warranted unless the claim

presents a "substantial controversy of immediacy and reality." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011).

BCH argues it was entitled to a declaratory judgment even after the alleged breach was remedied. In support of this argument, it cites section 37.004(a) of the Act, which provides that a contract may be construed before or after there has been a breach. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). Nothing in this language entitles BCH to a declaration that the Stillos violated the deed restrictions in the past. BCH also argues a declaration that the Stillos had violated Covenant 5 is appropriate because it was relevant to BCH's affirmative defenses of waiver and estoppel against the Association. BCH cites *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838 (Tex. 1990), for the proposition that declaratory relief is appropriate when a counterclaim for declaratory relief will have greater ramifications than the original suit. But whether there was a waiver of Covenant 5 is not relevant to the issue of whether there was a waiver of Covenant 1. *See, e.g., Lee*, 120 S.W.3d at 466 n.5.

The Stillos acknowledged they were in violation of Covenant 5 and promptly fixed the violation. Once the Stillos corrected the violation, there was no justiciable controversy as to the rights and status of the parties regarding the substance of the violation. *See Etan Indus.*, 359 S.W.3d at 624 (declaratory judgment claim about existence of easement for cable lines was moot because cable company removed cable lines from plaintiffs' property before trial); *Roach v. Ingram*, 557 S.W.3d 203, 222–23 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (plantiffs' claim for declaratory relief in connection with operation of county truancy program was moot after program ceased to exist). BCH argues that "even when a deed restriction violation has been cured, the prevailing party is still entitled to an award of attorney's fees." The cases BCH cites for this proposition, however, involve an award of attorney's fees under section 5.006 of the property code, not under the Declaratory Judgments Act. *See Nash v. Peters*, 303 S.W.3d 359, 362 (Tex. App.—

El Paso 2009, no pet.); *Norton v. Deer Creek Prop. Owners Ass'n*, No. 03-09-00422-CV, 2010 WL 2867375, at *8 (Tex. App.—Austin July 22, 2010, no pet.) (mem. op.). Section 5.006 provides that in an action for breach of a restrictive covenant, an award of attorney's fees to a prevailing party is mandatory. TEX. PROP. CODE ANN. § 5.006(a); *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 595 (Tex. App.—San Antonio 2017, pet. pending). The issue here is whether BCH was entitled to attorney's fees under the Declaratory Judgments Act. That Act does not require an award of attorney's fees; it affords the trial court a measure of discretion in deciding whether or not to award fees. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Teal Trading*, 534 S.W.3d at 595.

Although a claim for attorney's fees can prevent a declaratory judgment claim from becoming moot, *see Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 773–75 (Tex. App.—Dallas 2011, no pet.), there is nothing in the record to indicate the trial court dismissed BCH's claim for attorney's fees as moot rather than denying it as an exercise of discretion. *See Progressive Child Care Sys., Inc. v. Legacy Village Ltd. P'ship*, No. 05-15-01008-CV, 2016 WL 7166420, at *5 (Tex. App.—Dallas Dec. 5, 2016, no pet.) (mem. op.). The Stillos asserted in their summary judgment motion that BCH was not entitled to attorney's fees on its declaratory judgment claim because the filing and prosecution of the suit against them was not necessary and thus any attorney's fees incurred by BCH were not necessary or reasonable. BCH does not argue the trial court abused its discretion in failing to award it attorney's fees. BCH has not demonstrated the trial court erred in granting summary judgment to the Stillos on its claim for fees. Accordingly, we uphold the summary judgment in favor of the Stillos. We overrule BCH's fifth issue.

In sum, we reverse the trial court's summary judgment in favor of the Association on BCH's affirmative defense of waiver and remand the case to the trial court for further proceedings consistent with this opinion. Because we remand for further proceedings on one of BCH's

affirmative defenses, we also dissolve the permanent injunction. Likewise, we reverse that portion of the trial court's judgment awarding attorney's fees and costs to the Association and remand the issue of attorney's fees and costs for further proceedings. *See* TEX. PROP. CODE ANN. § 5.006(a) (providing for mandatory award of attorney's fees in action to enforce deed restrictions). In all other respects, we affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

171096F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BCH DEVELOPMENT, LLC, Appellant

No. 05-17-01096-CV     V.

LAKEVIEW HEIGHTS ADDITION
PROPERTY OWNERS' ASSOCIATION
AND BARBARA WOHLRABE, ET AL,
Appellees

On Appeal from the County Court at Law
No. 1, Dallas County, Texas
Trial Court Cause No. CC-13-05900-A.
Opinion delivered by Justice Brown, Justice
Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment granting summary judgment for appellees as to appellant's affirmative defense of waiver. We also **REVERSE** that portion of the judgment awarding attorney's fees and costs to appellees. We **DISSOLVE** the permanent injunction. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 21st day of May 2019.